SAMUEL ELIOT & others, trustees, *vs.* JOSEPH C. COULTER
& another, trustees
(and two companion cases [1]).

Suffolk.    October 7, 29, 1947. — December 2, 1947.

Present: QUA, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Appraisal.    Arbitration.    Value.    Landlord and Tenant,* Rent.

Provisions in long term leases of lands for periodic determinations of the
values of the lands by "arbitrators" or "disinterested parties" for
the purpose of computing the rentals at a specified percentage of
such values called for mere appraisals and not arbitrations; and the
appraisers were not required to notify or hear the parties to the leases
in making the determinations, nor was the correctness of the principles
and methods of valuation adopted by the appraisers open to inquiry
in the courts in the absence of fraud, corruption, dishonesty or bad
faith.

THREE BILLS IN EQUITY, filed in the Superior Court on
December 3, 1946.

Interlocutory decrees sustaining demurrers and final de-
crees dismissing the bills were entered by order of *Wil-
liams,* J. The plaintiffs appealed.

*J. J. Kaplan,* for the plaintiffs.

*A. B. Carey,* for the defendants Coulter and another.

*F. B. Turner,* (*R. W. Hardy* with him,) for the defendants
Turner and another.

*E. C. Thayer,* for the defendants Andrae and another.

LUMMUS, J.    A part of the land now covered by the
store building on Washington Street in Boston occupied
by Wm. Filene's Sons Company was leased on May 29,
1911, to the then trustees of the Business Real Estate
Trust of Boston, by the then trustees under the will of
Luther Adams for the term of ninety-nine years beginning

---

[1] The companion cases are bills in equity by the same plaintiffs, the first
against Francis P. Turner and another, trustees under the will of James B.
Pickett, numbered in the Superior Court 58461 Equity, and the second against
Henry P. Andrae and another, trustees under the will of Joseph Gahm, num-
bered 58462 Equity.

October 1, 1911, at an annual rental which on October 1, 1946, became "four and one half (4 ½) per cent per annum of the fair valuation of the land comprised in the premises; said fair valuation to be determined at the end of the first thirty-five (35) years [that is, on October 1, 1946] and once every ten (10) years thereafter during the continuance of the lease, by three (3) disinterested parties or a majority of them, one to be chosen by the lessors, one by the lessees and one by the two so chosen; the expense of such appraisal to be equally divided between the lessors and the lessees it being understood however, that in no event shall the annual rental at any time during the continuance of this lease except as above provided, be less than eighteen thousand dollars ($18,000) net to the lessors . . .." The foregoing is the lease that is material to the case entitled as above, and numbered 58460 Equity in the Superior Court.

Another part of the land now covered by said store building was leased on May 31, 1911, to the said trustees of the Business Real Estate Trust of Boston by one George A. Dill, for a similar term. The lease provided that the rent for the period from October 1, 1946, to September 30, 1956, should be "four and one half per cent (4½%) of the combined sum of (1) the fair value, at noon of August 1, A. D. 1946, of the land now comprised in the premises . . . and (2) twenty-two thousand dollars ($22,000) (said $22,000 being the estimated present value of the building now on the premises) per year for the next ten years of said term (that is, for the period from October 1, A.D. 1946, to September 30, A.D. 1956, inclusive) . . .." It was provided that at least sixty days prior to October 1, 1946, "the lessor, or his heirs or assigns, shall in writing designate some disinterested person as an arbitrator for the purposes herein mentioned, and the lessees or their representatives, successors or assigns shall in writing designate some disinterested person as an arbitrator for the purposes herein mentioned, and said two arbitrators so designated shall . . . in writing designate a third disinterested person as a third arbitrator for the purposes herein mentioned." It was provided that "The fair value of the land . . . as so deter-

mined and reported by said arbitrators or a majority of them shall be deemed the fair value of the land now comprised in the premises . . . for the period of ten years . . . with reference to which they shall have been designated, and four and one half per cent (4½%) of the combined sum of (1) said fair value of the land now comprised in the premises . . . as so determined and reported and (2) twenty-two thousand dollars ($22,000) shall be the yearly rent for such period of ten years . . .."

A third part of the land now covered by said store building was leased on May 1, 1911, to the said trustees of the Business Real Estate Trust of Boston by the trustees under the will of James B. Pickett for a similar term. The lease provided that the rent after October 1, 1946, should be "four and one half (4½) per cent per annum of the fair valuation of the land comprised in the premises, said fair valuation to be determined at the end of the first thirty-five years [that is, on October 1, 1946] and once every ten years thereafter during the continuance of the lease, by three disinterested parties, or a majority of them, one to be chosen by the lessors, one by the lessees and one by the two so chosen . . .."

In 1946 the lessees then holding under the Adams lease appointed John C. Kiley to determine the fair value of the premises, the lessors appointed Alfred S. Beck, and those two appointed Robert S. Wayland. The same persons were chosen under the Dill lease. The same persons were chosen under the Pickett lease, except that Elliott Henderson took the place of Alfred S. Beck. Each of these three boards determined the fair value of the land for the determination of which it was appointed, by a majority of such board, said John C. Kiley dissenting. The valuations were made without hearing the lessees, although they asked to be heard. The lessees contend in each case that the valuation was grossly excessive, and was made upon unsound principles and methods of calculation. The lessees holding the three several parcels, on December 3, 1946, brought these bills, praying that the awards be declared void and restraining the lessors from claiming rent under them. The plaintiffs

were required to file specifications. The several defendants demurred, and their demurrers were sustained subject to the plaintiffs' appeal, and the bills were dismissed. The plaintiffs appealed from the final decrees dismissing the bills.

The main question concerns the nature and effect of the provision for arbitration by three disinterested persons. In one of the leases those persons were called arbitrators, while in the others they were spoken of merely as disinterested parties or persons. They were not arbitrators in the technical sense, for there was no existing claim to be arbitrated. There was only a valuation to be made that would in the future prevent a resort to the courts or to technical arbitration. The leading case in this Commonwealth is *Palmer* v. *Clark*, 106 Mass. 373. In that case, at page 389, Colt, J., said, "A reference to a third person to fix by his judgment the price, quantity or quality of material, to make an appraisement of property and the like . . . differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive." This language was repeated in *McGurk* v. *Standard Plate Glass Co.* 207 Mass. 583, 585. In *Audette* v. *L'Union St. Joseph*, 178 Mass. 113, 115, Loring, J., said, "It is settled here that in contracts for erecting buildings or doing other work where it is stipulated that the quantity or quality of the work to be done shall be determined by an engineer or architect whose decision shall be final, it is not open to either party to show, when the engineer or architect has passed upon the question submitted to him, that he was in error and ought not to have given a certificate when he in fact gave one . . . or that the certificate given by him was erroneous." In *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 153, where directors were, by agreement, to appraise and take the stock of a decedent stockholder at their valuation, it was said that "The di-

rectors were not bound to give the defendant [executor] notice or a hearing" before the appraisal.

The doctrine of *Palmer* v. *Clark* was applied, in *Hanley* v. *Aetna Ins. Co.* 215 Mass. 425, 428, 429, to a provision in an insurance policy for determining the amount of loss by appraisers selected by the parties, and it was held that the appraisers could act without a hearing. See also *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 10. Compare under a later state of insurance law, *National Fire Ins. Co.* v. *Goggin,* 267 Mass. 430, 435, 436. In *Sorrells* v. *Ancona Co.* 250 Mass. 381, 390, it was held that the method of determining the fact in cases of appraisal is left to the appraisers. In *Franks* v. *Franks,* 294 Mass. 262, 266, it was again pointed out that "There is a clearly recognized distinction between the arbitration of a controversy and a contract one term of which calls for the ascertainment by designated persons of values, quantities, losses or similar facts." See also Bacon, Commercial Arbitrations (1925) 4.

Decisions in some other jurisdictions, at least, are in accord with ours. In *Omaha* v. *Omaha Water Co.* 218 U. S. 180, 198, Lurton, J., said, "If this was a technical arbitration of a matter of dispute or difference between the parties, to be heard and decided upon evidence submitted, the examination of the company's books without the consent of the city or the presence of its representatives would be such misconduct as would vitiate the award. . . . But in an appraisement, such as that here involved, the strict rules relating to arbitration and awards do not apply, and the appraisers were not rigidly required to confine themselves either to matters within their own knowledge or those submitted to them formally in the presence of the parties; but might reject, if they saw fit, evidence so submitted, and inform themselves from any other source, as experts who were at last to act upon their own judgment." See also *Monidah Trust* v. *Arctic Construction Co.* 264 Fed. 303; *In re Carus-Wilson & Greene,* 18 Q. B. D. 7; *Bewick* v. *Mecham,* 26 Cal. (2d) 92.

We think that in the present cases the leases called for a mere appraisal, and not an arbitration, that no notice or

hearing was required, and that the correctness of the principles and methods of valuation adopted by the appraisers cannot be inquired into by the courts, in the absence of fraud, corruption, dishonesty or bad faith, the existence of which the plaintiffs do not assert.

Upon motion of the defendants, the lessors, the plaintiff lessees were required to file specifications as to the details of the appraisal. The plaintiffs argue that those specifications are in effect amendments of the bill, and are to be considered as part of the bill on demurrer. In our opinion we are not called upon to decide the question whether the specifications have become part of the bill. Whether they have or not, we think that the appraisers were not required to hear the parties, and that their appraisal cannot be attacked because of the principles that they adopted in valuing the property. The plaintiffs moved in this court to amend their bills by incorporating therein the specifications. For reasons already stated such amendment would do the plaintiffs no good.

In each case the entry will be

> *Motion to amend bill denied.*
> *Interlocutory decree sustaining*
> *demurrer affirmed.*
> *Final decree dismissing bill*
> *affirmed with costs.*