VIRGINIA LALONDE & another[1] *vs.* BRUCE EISSNER & others.[2]

Essex.    May 3, 1989. — June 19, 1989.

Present: LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment. *Judicial Immunity. Doctor,* Court-appointed expert.

In an action arising in the context of a parental visitation dispute in which the probation department had designated a psychiatrist to evaluate the parents and their child pursuant to an order of a probate judge and in which the mother alleged that the psychiatrist's evaluation was negligently performed, resulting in the continuation of the father's visitation privileges and harm to the child, there was no error in allowing the defendant psychiatrist's motion for summary judgment on the ground of judicial immunity, where the plaintiffs did not dispute that a Probate Court judge had ordered the probation department to arrange the psychiatric evaluation of the family and that pursuant to the order, the department had referred the matter to the defendant psychiatrist. [209-210]

A court-appointed psychiatrist who renders expert services to a court is entitled to absolute immunity in the performance of those services. [210-212]

Although a psychiatrist was not specifically designated by a Probate Court judge's order to conduct a psychiatric evaluation of a family involved in a parental visitation dispute, but rather by the probation department acting pursuant to the judge's order, the psychiatrist was, nevertheless, entitled to absolute immunity in the performance of his services because of the function he performed and its essential connection to the judicial process. [212-213]

CIVIL ACTION commenced in the Superior Court Department on August 6, 1987.

A motion for summary judgment was heard by *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1] Her minor child.

[2] Stephen LaLonde, Anita Mehlman, Barry Elkin, George Lordan, and Frances Goldfield. Only Eissner is involved in the present appeal.

*Beth S. Herr* (*Lisa Wilson* with her) for the plaintiffs.

*Timothy P. O'Neill* (*Lauren A. White* with him) for Bruce Eissner.

LYNCH, J. The plaintiffs appeal from the entry of summary judgment in the Superior Court[3] dismissing Count 5 of their complaint, which sought damages arising from the defendant Dr. Bruce Eissner's allegedly negligent psychiatric evaluation of the LaLondes and their minor child.[4] We transferred the matter here on our own motion. The sole issue before us is the propriety of the judge's ruling that Dr. Eissner was entitled to absolute immunity.[5]

The gravamen of the plaintiffs' complaint against Dr. Eissner is that his negligently performed psychiatric evaluation caused Stephen LaLonde's visitation privileges to be continued and therefore caused further harm to the LaLondes' minor child. Dr. Eissner asserts that, since he was appointed by the Probate Court to evaluate the LaLonde family and report his findings to the court, he is entitled to quasi judicial immunity.

Dr. Eissner's deposition testimony, the parties' affidavits, and the relevant Probate Court documents, which were all before the motion judge, reveal the following. In the context of a visitation dispute, a Probate Court judge ordered the probation department to conduct a visitation investigation and to arrange for a psychiatric evaluation of the LaLonde family. Pursuant to that order, probation department personnel asked Dr. Eissner to conduct the evaluation. As part of his evaluation,

---

[3] The judgment in favor of Dr. Eissner was made final pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).

[4] Prior to the judgment, a medical malpractice tribunal concluded that the plaintiffs' evidence was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. The plaintiffs filed the requisite bond.

[5] In the court below Dr. Eissner's immunity defense was raised and briefed solely in the context of his motion for summary judgment. However, the judge's ruling appears on the face of Dr. Eissner's separate and earlier filed motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), which alleged that the claim was not brought by the real party in interest. Apparently, the judge had both motions under advisement at the time of the ruling. Because both parties treat the judge's ruling as a ruling on Dr. Eissner's motion for summary judgment and have briefed and argued the issue that way here on appeal, we address the issue as presented.

Dr. Eissner interviewed the family members and arranged for a separate psychological test for the LaLondes' minor child. Subsequently, Dr. Eissner submitted to the probation department a written report summarizing his findings. Dr. Eissner also testified at the Probate Court visitation hearing.

1. *Standard for summary judgment.* Rule 56 of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that a court shall grant a party's motion for summary judgment if (1) there is no genuine issue of material fact, and (2) the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c). See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). While a judge should view the evidence "with an indulgence in the [opposing party's] favor," *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986), quoting *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 221 (1979), cert. denied, 446 U.S. 935 (1980), the opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. *Community Nat'l Bank* v. *Dawes, supra.*

In opposing Dr. Eissner's motion for summary judgment, the plaintiffs did not dispute that the Probate Court judge ordered the probation department to arrange a psychiatric evaluation of the LaLonde family. Nor did the plaintiffs dispute that, pursuant to this order, the probation department referred the matter to Dr. Eissner.[6] Rather, the plaintiffs argue that a dispute of material facts exists concerning the scope and purpose of Dr. Eissner's evaluation as well as over the nature of the relationship between Dr. Eissner and the parties. The motion judge did not err in concluding that the plaintiffs failed

---

[6] The written record before the motion judge clearly supports this view. On July 18, 1985, a judge in the Probate Court issued a temporary order which required, inter alia, a "[p]sychiatric evaluation of the family to be arranged by the Probation Department." On October 10, 1985, a probation officer recommended to the Probate Court that it order "Virginia LaLonde [to] attend all appointments necessary to complete a psychiatric evaluation by Dr. Eissner of Marblehead." On that same day, the same judge fully adopted the probation department's recommendation merging the recommendation into the judge's order.

to "allege specific facts which establish that there is a genuine, triable issue" which would defeat summary judgment. *Community Nat'l Bank* v. *Dawes, supra* at 554.

The plaintiffs' allegations regarding the type of evaluation the Probate Court judge asked Dr. Eissner to perform and how well he performed it go to the underlying merits of the plaintiffs' negligence claim and not to the issue whether Dr. Eissner is entitled to immunity. In deciding this question, the judge need not consider the issues surrounding the manner in which the psychiatric evaluation was performed. See *Sullivan* v. *Kelleher*, 405 F.2d 486, 487 (1st Cir. 1968). Similarly, because there is no dispute that the Probate Court judge ordered Stephen LaLonde to pay the cost of Dr. Eissner's services,[7] such payment could not in and of itself vitiate immunity that would otherwise exist.

Because there is no dispute of material fact surrounding Dr. Eissner's status at the time he made his report and testified at the visitation hearing, the issue before us is whether a psychiatrist chosen by the probation department to conduct a court-ordered psychiatric evaluation is entitled to quasi judicial immunity.

2. *Quasi judicial immunity.* It is a well-settled principle under our common law, "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law." *Allard* v. *Estes*, 292 Mass. 187, 189-190 (1935). See *Pratt* v. *Gardner*, 2 Cush. 63, 68-69 (1848). See also *Temple* v. *Marlborough Div. of the Dist. Court Dep't*, 395 Mass. 117, 132 (1985). The doctrine of absolute judicial immunity which first arose under the common law has been extended to persons, other than judges, performing judicial or quasi judicial functions. See, e.g., *Imbler* v. *Pachtman*, 424 U.S. 409, 430-431 (1976) (prosecuting attorneys associated with judicial phase of crim-

---

[7] The Probate Court judge's order of October 10, 1985, incorporated the probation department's recommendation, which specifically stated that Stephen LaLonde was to be responsible for the cost of the psychiatric evaluation.

inal process); *Demoran* v. *Witt*, 781 F.2d 155, 157-158 (9th Cir. 1986) (probation officer preparing presentence reports); *Burkes* v. *Callion*, 433 F.2d 318, 319 (9th Cir. 1970), cert. denied, 403 U.S. 908 (1971) (probation officer and court-appointed psychiatrists). Courts have expanded the doctrine of absolute judicial immunity to include these "quasi judicial" officers because they are involved in an integral part of the judicial process and thus must be able to act freely without the threat of a law suit. *Robichaud* v. *Ronan*, 351 F.2d 533, 535-538 (9th Cir. 1965). When acting at a judge's direction, these "quasi judicial" officers enjoy the same absolute immunity for their conduct. *Temple* v. *Marlborough Div. of the Dist. Court Dep't, supra* at 133 (court clerk).

In *Temple* v. *Marlborough Div. of the Dist. Court Dep't, supra* at 132, we dealt with a statute which granted immunity to a court psychiatrist acting pursuant to its provisions. G. L. c. 123 (1986 ed.). We did not reach the question of the extent to which the statute may have extended or limited common law immunity. Most jurisdictions have held that common law immunity protects persons appointed by a court to conduct a medical or psychiatric evaluation and render an opinion or to provide other expert assistance because of their integral relation to the judicial process. See, e.g., *Moses* v. *Parwatikar*, 813 F.2d 891, 892 (8th Cir.), cert. denied, 108 S. Ct. 108 (1987) (psychiatrist); *Myers* v. *Morris*, 810 F.2d 1437, 1467 (8th Cir.), cert. denied, 108 S. Ct. 97 (1987) (therapists in child sexual abuse case); *Burkes* v. *Callion, supra* at 319 (psychiatrists); *Bartlett* v. *Weimer*, 268 F.2d 860, 862 (7th Cir. 1959), cert. denied, 361 U.S. 938 (1960) (physicians); *Williams* v. *Rappeport*, 699 F. Supp. 501, 507-508 (D. Md. 1988) (psychiatrist and psychologist appointed during custody determination); *Miner* v. *Baker*, 638 F. Supp. 239, 241 (E.D. Mo. 1986) (psychiatrist); *Doe* v. *Hennepin County*, 623 F. Supp. 982, 986 (D. Minn. 1985) (therapists in child sexual abuse case); *Phillips* v. *Singletary*, 350 F. Supp. 297, 300 (D.S.C. 1972) (physician); *Bartlett* v. *Duty*, 174 F. Supp. 94, 97-98 (N.D. Ohio 1959) (physician). These courts recognized that "[p]sychologists and other experts would be reluctant to accept

court appointments if they thereby opened themselves to liability for their actions in this official capacity." *Doe* v. *Hennepin County*, *supra* at 986. *Moses* v. *Parwatikar*, *supra* at 892. Also, human nature indicates that court-appointed experts, faced with the threat of personal liability, will be less likely to offer the disinterested objective opinion that the court seeks. *Id.* Given these concerns and the weight of authority in favor of immunity in these circumstances, we conclude that a court-appointed psychiatrist, such as Dr. Eissner, who performs an essential function by rendering expert services to the court, is entitled to immunity in the performance of those services.[8]

The fact that Dr. Eissner was not specifically designated by the judge's order, but rather by the probation department acting pursuant to a court order, does not change our view. Dr. Eissner is entitled to immunity because of the function he performed and its essential connection to the judicial process.[9] See *Moses* v. *Parwatikar*, *supra* at 892.

The plaintiffs argue that potential liability acts to discourage inadequate and negligent evaluations, and therefore public policy does not warrant extending quasi judicial immunity to persons such as Dr. Eissner. While we are cognizant of the need to prevent negligently performed evaluations, our judicial system has inherent safeguards that minimize the risk of decisions based on inaccurate, misleading, or negligently conducted evaluations. Cf. *Crosby-Bey* v. *Jansson*, 586 F. Supp. 96, 99-100 (D.D.C. 1984). Here, Dr. Eissner testified at a hearing in the Probate Court where he was subject to cross-examination by which the plaintiffs could bring to the judge's attention any alleged deficiencies in either Dr. Eissner's report or his tes-

---

[8] Because we conclude that Dr. Eissner's court-appointed status entitles him to absolute immunity, we need not address the question whether Dr. Eissner is entitled to qualified immunity. Once a court finds that nonjudicial persons "fulfill quasi-judicial functions intimately related to the judicial process[, they] have absolute immunity for damage claims arising from their performance of the delegated functions." *Myers* v. *Morris*, *supra* at 1467. See *Moses* v. *Parwatikar*, *supra* at 892.

[9] Similarly, the fact that the Probate Court judge ordered Stephen LaLonde to be responsible for the cost of Dr. Eissner's services does not affect Dr. Eissner's status as a quasi judicial officer entitled to immunity.

timony. Cf. *Gilmore* v. *Gilmore*, 369 Mass. 598, 603 (1976) ("In light of the probate judge's apparent reliance on the guardian ad litem's investigative report, we believe that, consistent with principles of fundamental fairness, cross-examination of the investigator should be permitted"). In addition, if the plaintiffs believed that the visitation order was erroneously entered, they were free to seek appellate review or, as they did here, request a modification of the order.

Accordingly, we conclude that persons appointed to perform essential judicial functions are entitled to absolute immunity. There was no error in the entry of summary judgment in favor of Dr. Eissner.

*Judgment affirmed.*