MADELINE COMINS, guardian, *vs.* ROBERT SHARKANSKY.

No. 93-P-1502.

Middlesex. October 19, 1994. - January 9, 1995.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Judicial Immunity. Accountant. Value. Waiver. Damages*, Attorney's fees.

A certified public accountant, chosen under a court approved settlement agreement to make an appraisal of stock binding on the parties to a petition for accounting brought in the Probate Court, was not acting as an arbitrator or performing in any other judicial function in the circumstances and thus was not entitled to absolute immunity as a quasi judicial officer in a subsequent action alleging the accountant was negligent in making the appraisal. [39-42]

In an action brought against an accountant for his alleged negligence in conducting an appraisal in a prior Probate Court proceeding, the judge incorrectly ordered summary judgment for the defendant on the defendant's motion for judgment on the pleadings without giving the plaintiff notice and an opportunity to present materials pertinent to a motion for summary judgment, and the judge incorrectly ruled that the plaintiff had waived her claims against the defendant by not challenging the appraisal in the prior action, where the accountant had not been a party to that proceeding. [42-43]

Nothing in a stock purchase agreement supported a claim of the appraiser chosen under the terms of the agreement for indemnification of the appraiser's legal fees and costs arising from a subsequent civil action alleging his negligence in conducting the appraisal. [43-44]

CIVIL ACTION commenced in the Superior Court Department on September 23, 1992.

The case was heard by *Thayer Fremont-Smith*, J., on a motion for summary judgment.

*Amy M. Feinberg* for the plaintiff.

*Warren D. Hutchinson* for the defendant.

DREBEN, J. The primary question raised by this appeal is whether the defendant-accountant, chosen under a court approved settlement agreement to make an appraisal of stock

binding on the parties, is entitled to absolute immunity as a quasi judicial officer. We hold that he is not.

In settlement of a petition for an accounting brought in the Probate Court by the mother, as guardian of her daughter, Chloe,[1] against the father who was the custodian of Chloe's shares in Clo Corporation (Clo), the parties executed a "Stock Purchase Agreement." The agreement was subsequently approved by the Probate Court and provided that Clo would purchase at fair market value the shares owned by Chloe. These shares represented fifty percent of the outstanding stock of Clo; the father owned the remaining shares. The defendant, a certified public accountant, and the accountant for both Clo and the father, was designated by the agreement "as the person who shall perform the appraisal in order to arrive at the fair market value of Chloe's stock in Clo." That value was to be "final and binding" on the parties, and the agreement, which also covered other matters,[2] stated that "each [of the parties] intends to be bound by the terms of this agreement, 'come Hell or high water.'" The defendant appraised Chloe's stock at $110,000, and her stock was sold to Clo at that price.

Less than a year after the signing of the agreement, the mother brought·the present action in the Superior Court against the defendant-accountant alleging that he was negligent in a number of respects, including that, in making the appraisal, he failed to follow, as required by the Stock Purchase Agreement, standards and practices of the American Institute of Certified Public Accountants. After filing an answer, the defendant moved for judgment on the pleadings, claiming that he was an "arbitrator" entitled to absolute im-

---

[1]When we refer to the mother in this opinion, we do so in her capacity as guardian of her daughter, Chloe Comins. The father, Kenneth Comins, was the mother's former husband.

[2]Included, inter alia, were provisions releasing the parties from further liability, determining the father's reasonable compensation from Clo, and setting forth that payments for Clo's stock purchase were to be made solely by Clo, and not by the father personally, that a guardianship account would be established for Chloe, and that the mother would not engage in competition with Clo for a period of three years after the last payment to Chloe.

munity as a quasi judicial officer. Treating the motion as one for summary judgment, the motion judge rejected the defendant's claim of immunity. He concluded, however, that the mother, who had admitted at the hearing on the motion that she had "accepted the benefit of [the defendant's] valuation for purposes of her dispute with Mr. Comins and [had] raised no question in the Probate Court as to whether the Stock Purchase Agreement had been properly carried out . . . , acquiesced in the valuation and had waived any objections she may have had to the method employed by [the defendant] in arriving at his appraisal." The judge rejected the defendant's claim for indemnification for his legal fees and costs. Both parties have appealed — the mother from the dismissal of the action and the defendant from the ruling that he is not entitled to be reimbursed for his legal fees. While we agree with the judge's conclusion that the defendant is not entitled to immunity as a quasi judicial officer nor to be reimbursed for his attorney's fees, we do not consider the conclusion that the mother waived her rights against the defendant warranted on this record.

1. *Quasi judicial immunity.* As stated by Chief Justice Shaw, and as rooted in the common law, "The general principle, which excepts judges from answering in a private action, as for a tort, for any judgment given in the due course of the administration of justice, seems to be too well settled to require discussion." *Pratt* v. *Gardner*, 2 Cushing 63, 70 (1849).[3] Immunity is not limited to judges. The "same considerations of public policy apply" to arbitrators who "under our laws, exercise[ ] judicial functions." *Hoosac Tunnel Dock & Elevator Co.* v. *O'Brien*, 137 Mass. 424, 426 (1884). Immunity has also been extended to others who "are involved in an integral part of the judicial process and thus must be able to act freely without the threat of a lawsuit." *LaLonde* v. *Eissner*, 405 Mass. 207, 211 (1989). *Commonwealth* v. *O'Neil*, 418 Mass. 760, 767 (1994). Thus, when a psychia-

---

[3]Shaw nevertheless cogently expressed the policy considerations underlying the principle of judicial immunity. *Pratt* v. *Gardner, supra* at 69-70. See also *Allard* v. *Estes*, 292 Mass. 187, 189-190 (1935).

trist or other expert is appointed at a judge's direction to render expert services "to the court" and to give "the disinterested objective opinion that the court seeks," the expert is accorded immunity. *LaLonde* v. *Eissner, supra* at 212.

The defendant is neither an arbitrator exercising "quasi judicial" functions nor an expert rendering expert services *to the court*. Although the terms "appraisal" and arbitration may in some instances overlap, for example where one of the functions of an arbitrator may be the appraisal or valuation of property, 6A Corbin, Contracts § 1442 at 426 (1962 & Supp. 1993), what is relevant for purposes of immunity is whether the parties have substituted for the court a private tribunal with power to render a final judgment on the issues submitted. *Id.* at 427. While an arbitration may be less formal than court proceedings, the parties contemplate that an arbitrator will hold hearings and will take evidence in the presence of the parties. *Eliot* v. *Coulter*, 322 Mass. 86, 90 (1947). Corbin, Contracts, *supra* at 427-428. See also Note, Arbitration or Appraisement?, 8 Syracuse L. Rev. 205, 205-206 (1957).

"There is a clearly recognized distinction between the arbitration of a controversy and a contract one term of which calls for the ascertainment by designated persons of values, quantities, losses or similar facts." *Franks* v. *Franks*, 294 Mass. 262, 266 (1936). *Eliot* v. *Coulter*, 322 Mass. at 90. Appraisers may act without a hearing, *Palmer* v. *Clark*, 106 Mass. 373, 389 (1871), and may "reject, if they [see] fit, evidence [submitted to them formally in the presence of the parties] and inform themselves from any source, as experts who [are] . . . to act upon their own judgment." *Eliot* v. *Coulter, supra* at 90, quoting from *Omaha* v. *Omaha Water Co.*, 218 U.S. 180, 198 (1910).

The Stock Purchase Agreement referred to the defendant as an "appraiser" and contained some explicit instructions. The report had to be in writing, a draft report was required, and the appraiser was to "speak with, but not be bound by the opinions of" the father, the mother, and two other named persons. "To the extent accounting work is required or inter-

preted, the appraiser shall use the Generally Accepted Accounting Principles and Standards of the American Institute of Certified Public Accountants." Also, "[t]he appraiser may . . . consider whatever else he, in his discretion, deems appropriate for the purposes of performing his appraisal, including but not limited to the reports of Clo's operations . . . and its income tax returns for its FYE 10.31.91."

Under the agreement, the defendant was expected to use his professional accountancy skills to determine the valuation of Clo, rather than to make his decision based on evidence received in the presence of or on notice to the parties. He was not to act as a private tribunal in place of a judge. What was reserved to him was simply a method of ascertaining one item, as an expert accountant-appraiser, in an agreement settling the action brought by the mother against the father in the Probate Court.

As an expert, charged with furnishing skilled services for compensation, he is subject to the standards of reasonable care applicable to accountants. If he failed to meet those standards, he is not entitled to be relieved from liability for any such failure on the ground of quasi judicial immunity.

In similar circumstances, cases elsewhere have not accorded appraisers immunity despite their claims to be arbitrators. See, e.g., *Horsell Graphic Indus.* v. *Valuation Counselors, Inc.*, 639 F. Supp. 1117, 1119-1120 (N.D. Ill. 1986); *Gammel* v. *Ernst & Ernst*, 245 Minn. 249, 255-256 (1955); *Levine* v. *Wiss & Co.*, 97 N.J. 242, 248-253 (1984). See also 16 Williston, Contracts § 1920 at 227 (3d ed. 1976) (Immunity does not extend to those who are only appraisers). The case to the contrary cited by the defendant, *Wasyl, Inc.* v. *First Boston Corp.*, 813 F.2d 1579 (9th Cir. 1987), is inapposite because it is based on a California statute (Cal. Civ. Proc. Code § 1280 [West 1982]) which provides that "agreements providing for valuation [and] appraisals" are included within the definition of arbitration. See *Coopers & Lybrand* v. *Schwartz*, 212 Cal. App. 3d 524, 532-534 (1989), discussing the history of that statute which "erased the judicial distinction between agreements to arbitrate disputes and

agreements providing for independent examinations by way of valuations [and] appraisals."[4] *Id.* at 534.

That the probate judge approved the Stock Purchase Agreement does not bring the defendant within the principles of immunity set forth in the *LaLonde* case discussed earlier. The appraiser was not appointed to render expert services to the court. Even a "court-appointment is not a talisman for immunity." *Levine* v. *Wiss & Co.*, 97 N.J. at 252. It does not alter the critical fact that the defendant "was not conducting any hearing or performing any other judicial function." *Commonwealth* v. *O'Neil*, 418 Mass. at 767. *Levine* v. *Wiss & Co.*, *supra* at 252.

2. *Waiver.* As indicated earlier, the motion judge, based on an admission of the mother (or her counsel) at the hearing on the defendant's motion for judgment on the pleadings, held that she had "acquiesced in the valuation and [had] waived any objections" to the defendant's methods in arriving at his appraisal. There are a number of difficulties with this conclusion. Waiver is primarily a question of fact. It appears that the mother was not given notice that the motion for judgment on the pleadings was converted to a motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), and was not given an opportunity to present the materials pertinent to such a motion. See *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 892 (1983). Thus the procedural niceties for the judgment were not met. Moreover, since "[a]cquiescence is conduct from which may be inferred assent with a consequent estoppel or quasi estoppel," *Uccello* v. *Gold'n Foods, Inc.*, 325 Mass. 319, 328 (1950), crucial, but

---

[4]The statute was enacted to change the rule of *Bewick* v. *Mecham*, 26 Cal. 2d 92, 97-98 (1945), which was in accord with the other cases cited in this opinion, namely, "Submissions to determine values are of two kinds — first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment; second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion. In cases of the first class, it is usually held that the agreement is not properly a submission to arbitration and is not subject to the rules which govern arbitrators." *Id.* at 97, quoting from *Dore* v. *Southern Pac. Co.*, 163 Cal. 182, 189 (1912).

not apparent on the record, is whether the mother knew of the alleged improprieties of the defendant at the time of the sale of Chloe's stock to Clo or at any other time which may be relevant.

There is here no waiver as matter of law merely by virtue of the mother's not challenging the valuation in an action against the father. The claims the mother would be able to assert against the father based on the appraisal are more limited, see *Eliot* v. *Coulter*, 322 Mass. at 91; *Cambridge St. Metal Co.* v. *Corrao*, 30 Mass. App. Ct. 150, 155-156 (1991), than those she may assert against the defendant. Thus, even if the mother had raised objections to the appraisal in the Probate Court by reinstituting the action which had been dismissed against the father, any decision by that court as to whether the mother was bound by the defendant's appraisal would not, under the principles of claim preclusion, be a bar to an action against the defendant unless he had been named as a party in those proceedings and the claims against the father were the same as those against him.[5] In these circumstances, the failure to bring another action (or to revive her former action) against the father was not a waiver of the mother's claims against the defendant.

3. *Reimbursement of the defendant's legal fees and costs.* The Stock Purchase Agreement provided that if "a party . . . attempts to litigate over any part of this agreement (other than to enforce this agreement)" that party shall be responsible for the other party's reasonable legal fees. The defendant is not protected under that provision. The agreement listed who were the parties — mother, as guardian and individually, father, and Clo; the defendant was not included. He signed the agreement, below the jurats of the other three, under a provision entitled "Acceptance of Appraiser" which,

---

[5]Even if any litigated claims against the father decided adversely to the mother could be asserted defensively as a bar by the defendant, see *Gammel* v. *Ernst & Ernst*, 245 Minn. at 257; see also *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968); Restatement (Second) of Judgments § 29 (1982), this is not a reason to require the mother to bring an action against the father.

in its entirety, merely stated "I hereby accept the job of appraiser as set out in the above agreement."[6]

Contrary to his contentions, there is nothing in the agreement to suggest that the defendant is a third-party beneficiary of the Stock Purchase Agreement. The defendant's counterclaim was properly dismissed.

4. *Conclusion.* The defendant, not having a quasi judicial function under the agreement, is not entitled to immunity. On this record, the determination that the mother waived her objections to the appraisal vis-à-vis the defendant is not warranted. Further proceedings are necessary. Other questions which require consideration include, whether (on admissible evidence) it was intended that the appraiser be free from liability, and if not, whether he performed his obligations under the contract or acted negligently.[7]

Accordingly, the judgment for the defendant is reversed and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[6]The defendant undertook certain obligations by his acceptance, and the present action, in part at least, seeks to enforce those obligations.

[7]Although the mother's complaint charged the defendant with bad faith, her memorandum before the motion judge only discussed claims of negligence.