Lauriat, J.
Edward McLarnon (“McLarnon”) brought this action against the Massachusetts General Hospital, Kenneth Herman, Ph.D., and Barbara Beardslee, LICSW (“the defendants”), alleging claims of breach of contract and violations of G.L.c. 93A, arising from the defendants’ alleged theft of money from him. The defendants were appointed as Guardian Ad Litem by the Probate and Family Court (Nelson-Dilday, J.) on March 27, 1995, to conduct an evaluation of McLarnon, his now former wife and their then fourteen-year-old son to address the issue of visitation by McLarnon with his son, all in connection with a proceeding then pending in the Probate and Family Court (Edward S. McLarnon v. Virginia Jokisch, Docket No. 84D 3694). The Probate and Family Court (NelsonDilday, J.) had also ordered McLarnon to pay for the cost of the defendants’ evaluation to the extent that it exceeded the cost of the evaluation that had earlier been proposed by the Family Development Clinic.
McLarnon asserts that the defendants charged him $3,000, but failed to complete the court-ordered evaluation or to prepare a final report. He claims that the “GAL took [his] money, and didn’t do the job they were paid to do, and it damaged him in substantial ways, financially and familialy [sic].”
The defendants have now moved to dismiss McLarnon’s present action, or for summaiy judgment, on several grounds. For the reasons set forth below, *204 the defendants’ motion, treated as one for summary judgment, see Mass.R.Civ.P. 12(b) is allowed.
DISCUSSION
I.
The standard governing consideration of a summary judgment motion is well known. The court will grant summary judgment when there are no genuine issues of material fact and where the record, including the pleadings and affidavits entitles the moving party to judgment as a matter of law. Casesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The non-moving party cannot defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
II.
The defendants’ initial argument for summary judgment is that they are cloaked with absolute immunity because they were performing quasi-judicial functions. Immunity under this theory extends from the judge to those “involved in an integral part of the judicial process and thus [they] must be able to act freely without the threat of a lawsuit.” LaLonde v. Eissner, 405 Mass. 207, 211 (1989). This immunity has most often been invoked on behalf of medical professionals, but guardian ad litems are subject to the same grant of immunity when they are engaged to make recommendations to the court. Sharkisian v. Benjamin, Civil No. 995448 (Mass. Super. May 2, 2000) (Fabricant, J.). The result is that when a court, as here, directs a court-appointee to gather and evaluate evidence in order to provide a disinterested opinion for the court’s benefit, that appointee is afforded immunity co-extensive with the court’s.
A court appointment is not sufficient to automatically invoke immunity. Comins v. Sharkansky, 38 Mass.App.Ct. 37, 40 (1995). A court-appointed attorney designated to advocate for a specific client does not enjoy judicial immunity. 14 ALR 5th 929, 936 (1993). The court looks to the interests sought to be served by the appointment to determine when immunity is appropriate. Id. The court-appointed attorney’s primary obligation is to his client. The attorney is subject to duties that run to that client and liability if those duties are not met. A court-appointed evaluator, on the other hand, when tasked to gather and evaluate evidence, owes a duty primarily to the court. The grant of judicial immunity under the latter circumstances rests on the same policy concerns that protect judicial independence. Freedom from suit encourages the candor and honesty necessary to arrive at the best possible disposition of the case. The pool of qualified individuals available to assist the court could either quickly evaporate or render suspect opinions if faced with the prospect of lengthy and costly litigation at every turn.
McLarnon asserts that this leaves him with only paper protections from the abuses of a court-appointed evaluator. The court does not share plaintiffs fear that abuses will simply continue to go unremedied despite his efforts to bring those abuses to the court’s attention. Poor performance by a court-appointed evaluator serves no one’s interest; but the process in place ensures that the court can continue to fulfill vital functions that plaintiffs recommended remedy would put in unacceptable jeopardy. Therefore, the court concludes that the defendants in this matter were all engaged in quasi-judicial functions while performing the acts of which plaintiff complains, and are consequently afforded judicial immunity for those acts.
III.
Having clarified the relationships between the parties, the court does not hesitate to find that they did not form a contract. Traditional contract theory states that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement. McCarthy v. Tobin, 429 Mass. 84, 87 (1999). Even construing facts in McLarnon’s favor, the only agreement the defendants made with McLarnon concerned the manner in which McLarnon would meet his obligations under the court’s order to pay defendants’ fees. Billing invoices and canceled checks are insufficient to create even a shadow of an agreement beyond that limited scope. Payment of court ordered fees is not sufficient evidence of a relationship carrying duties between the parties. Gerber v. Peters, 584 A.2d 605, 607 (Me. 1990). Thus, an attorney-client relationship between an attorney acting as guardian ad litem and a parent is not created by the court’s appointment of the guardian or by a requirement that the parents be responsible for the guardian’s fees. Id. Similarly, court ordered payments to experts do not establish relationships that interfere with grants of judicial immunity. LaLonde at 212, n.9.
Courts do not impose fee responsibilities on the parents of minor children in order to allow them to enforce contract terms they had no part in making. Rather, those payments stem from the parents’ continuing responsibility to provide for their child’s support in circumstances where the child’s best interests are still in doubt. As the relationship between the court, the child and the parents encompasses the parental duty, it also defines the remedy when those duties are not met. Parents have the option to bring a guardian’s poor performance to the court’s attention; they may contest the findings of a court-appointed expert; or, they may appeal the court’s decision. Those *205 remedies exist apart from contract because while court orders and acts in fulfillment of those orders may show a relationship between the court and the parties, it is not sufficient to establish that a contractual relationship exists outside the limitation imposed by the court. The court, therefore, concludes that a contract between the parties cannot be inferred from the evidence of McLarnon’s financial dealings with the defendants.
IV.
McLarnon fares no better on his claim that he is entitled to enforce the defendants’ contract with the court as a third-party beneficiary. The rights of a third-party beneficiary to enforce a contract arises “when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third.” Rae v. Air-Speed Inc., 386 Mass. 187, 195 (1982). Thus, enforcement rights do not extend to anyone or everyone potentially benefitted by the contracting parties’ agreement, but only to those who can demonstrate from the language and circumstances of the contract that the parties clearly and definitely intended the beneficiaries to benefit from the promised performance. Miller v. Mooney, 431 Mass. 57, 61-62 (2000).
Even if the court were to assume that the defendants had a contractual relationship with the court, McLarnon does not qualify as an intended beneficiary of that relationship. Construing the evidence in the light most favorable to McLarnon, only McLarnon’s son, Ian McLarnon, has any claim to third-party beneficiary status. The court’s appointment of a guardian for Ian signals its awareness that McLarnon and his son may have, at least perceived, divergent interests. The court recognized that in acting for the son’s interests, it may take action contrary to what McLarnon believes are his own interests. Therefore, McLarnon can not be considered as one clearly and definitely intended to benefit from the relationship between the defendants and the court.
V.
McLarnon’s reliance on his $3,000 payment to the defendants and their invoices is misplaced in the context of his third-party beneficiary argument for the same reasons that fail to support his theory of relief under traditional contract principles. Similarly, they do not boost his claim to be within the protection of G.L.c. 93A. The parties agree that Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 22-23 (1997), requires that McLarnon demonstrate that the parties engaged in a business transaction before protections afforded under G.L.c. 93A become available. McLarnon once again points to his payments and to the defendants’ invoices to argue that he engaged the defendants to provide a commercial service. Whether or not the defendants engage in evaluating children as a commercial enterprise, McLarnon has not provided sufficient evidence that his transaction with the defendants proceeded on that basis. Therefore, the court fails to see the commercial context necessary to support a claim under G.L.c. 93A.
VI.
Having failed to discern a contractual theory under which plaintiff can succeed, and concluding that judicial immunity protects these defendants, the court does not consider further McLarnon’s opposition to defendant’s motion for summary judgment on the grounds of claim preclusion, statute of limitations and failure to allege or produce evidence in support of a necessary element of a claim of emotional distress. The court would point out that plaintiff is in a poor position to argue that preclusion ought not apply due to lack of a final order when it lay within his power to pursue finality within the appropriate judicial framework.
ORDER
For the foregoing reasons, the Motion by Defendants to Dismiss Plaintiffs Complaint and/or for Summary Judgment, treated as a motion for summary judgment pursuant to Mass.R.Civ.P. 12(b), is ALLOWED.