STATE ROOM, INC. *vs.* MA-60 STATE ASSOCIATES, L.L.C., & others.[1]

No. 12-P-1915.

Suffolk. May 10, 2013. - September 13, 2013.

Present: GRASSO, SIKORA, & MALDONADO, JJ.

*Appraisal. Value. Landlord and Tenant,* Rent.

In a civil action between the parties to a long-term commercial lease, in which the tenant disputed the correctness of a rental rate determined by an appraisal process authorized by the terms of the lease, the judge correctly entered a judgment of dismissal as a matter of law by reason of the unreviewability of the appraisal (a conclusive affirmative defense evidenced on the face of the complaint), where the tenant claimed, at most, that the appraisers had committed errors within their authority, and not that they had engaged in any action beyond it. [248-252]

CIVIL ACTION commenced in the Superior Court Department on October 6, 2011.

A motion to dismiss was heard by *Peter M. Lauriat,* J.

*Colleen C. Cook* for the plaintiff.

*Lawrence G. Green* (*Alexandra Capachietti* with him) for the defendants.

SIKORA, J. This appeal presents a dispute between the parties of a long-term commercial tenancy at a downtown Boston high-rise office building. The landlord parties consist of three corporations and a real estate investment trust identified in the margin;[2] we shall refer to them collectively as the landlord. The tenant is State Room, Inc. (State Room), a Massachusetts corporation. In 1990 and 1994, the parties' predecessors in interest executed

---

[1]MA-60 State Executive, L.L.C.; MA-60 State Executive Manager, L.L.C.; Equity Offices Properties Trust; and EOP Operating Limited Partnership.

[2]MA-60 State Associates, L.L.C., and the first three entities identified in note 1, *supra.*

the governing lease documents (lease). Sixty State Street is a building of thirty-eight rentable floors. The space at issue occupies portions of the thirty-third and thirty-fourth floors. Over time it has served as a restaurant and as an event venue (i.e., as function rooms for business and social events).

The principal issue on appeal is the enforceability of the current rental rate for the extension of the tenancy through the ten years from May 1, 2010, through April 30, 2020. In accordance with the terms of the lease, when the parties could not agree upon that figure, they submitted it to an appraisal process. In 2009, the designated appraisers calculated rates for the oncoming decade. In 2010, State Room objected to the rates as the product of mistaken information and flawed application of the appraisal criteria prescribed by the lease. When the appraisers declined to reconsider their computation, State Room brought suit in Superior Court seeking a judgment declaring the invalidity of the resulting rates and an order compelling a new appraisal. A judge of that court entered a judgment of dismissal in favor of the landlord. For the following reasons, we now affirm.

*Background.* In review of a dismissal pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 754 (1974), we draw our facts from the allegations of the complaint and from its appended materials incorporated by reference. See *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000); *Vranos* v. *Skinner*, 77 Mass. App. Ct. 280, 282 n.3 (2010).

1. *Lease terms.* Under the original 1990 lease, the predecessor tenant rented an area of 19,126 square feet. By the related lease of 1994, the tenant assumed an additional area of 13,366 square feet. Under both instruments the initial term expired at the close of April 30, 2010. The tenant received the right to extend for two successive ten-year terms upon proper notice and the determination of the rental rate.

The landlord was to propose a fair market rental value for the extension period; the tenant could object. Each party would then appoint a qualified independent appraiser; those two would appoint a third qualified appraiser. Each appraiser would make a separate determination of the fair market rental value; they would average the three values, exclude the figure farthest from

that average, and then average the two remaining figures for the resulting fair market rate.

The critical language of the lease directed that "[e]ach appraiser shall consider the following factors (but shall not be limited to such factors) in reaching his determination." The factors included (i) inflationary data, (ii) "fair market rental values for other first-class restaurant facilities in Boston with comparable sales per square foot and comparable average billing per person served"; and (iii) "the special circumstances of the location, . . . in particular its special views and ambiance."

Both the 1990 and 1994 leases defined as "permitted uses" of the premises "[r]estaurant and related facilities: [f]irst-class restaurant, cocktail lounge, luncheon club and private dining rooms, and uses directly related thereto . . . and such other uses as [l]andlord in the future may approve . . . ."

2. *Tenancy developments.* From 1990 until early 1994, the original tenant (Bay Tower, Inc.) operated as a restaurant, cocktail lounge, and event venue. In late 2003, it filed a petition under Chapter 11 of the United States Bankruptcy Code. As part of the resulting reorganization approved by the United States Bankruptcy Court, State Room paid a substantial volume of Bay Tower, Inc.'s back rent, received Bay Tower, Inc.'s rights under the lease, and thereafter employed the space exclusively as an event venue.

3. *Prior litigation.* In late 2007, State Room informed the landlord of its intention to extend the tenancy through the 2010-2020 period. In early 2008, the landlord sent State Room a notice of default by reason of its alleged "abandonment" of the use of the premises as a restaurant, cocktail lounge, and private dining area, and in March of that year rejected State Room's formal notice of extension upon the ground of that default. State Room brought an action in Superior Court for, inter alia, a judgment declaring its right to use the premises exclusively as an event venue. A judge of the Superior Court entered summary judgment on the issue in favor of State Room. She reasoned that the "permitted use" clause of the lease authorized exclusive use as an event venue, and that the landlord had effectively

known of, and approved of, that exclusive use since the bankruptcy reorganization.[3]

4. *Extension rent.* Meanwhile friction continued through the rent-fixing process for the period of 2010 through 2020. The landlord proposed a figure; State Room objected. Each then nominated an appraiser;[4] those nominees selected a third appraiser.[5] The appraisers had access to the decision of the Superior Court[6] validating the exclusive use of the premises as an event venue. Each appraiser prepared a report. In accordance with the process required by the lease, they excluded the figure farthest from the three-member average (the proposal of the landlord's appraiser) and as a result reported the average of the remaining two calculations as the binding outcome: $39 per square foot for the first five years of the lease extension, and $43.50 per square foot the second five years.[7]

The appraisers reported their decision in August of 2009. State Room began regular monthly payments of the increased rate from the beginning of the extension period of May 1, 2010, onward. On November 30, 2010, its counsel forwarded a letter to all three appraisers. State Room alleged that it had commissioned a review of the appraisers' respective reports and uncovered multiple errors resulting in an inflated computation of the extension rent. It proposed reconsideration and modification of the reports.

Counsel for the landlord objected to any reconsideration. By a joint letter, the three appraisers responded that the governing

---

[3]The landlord took the position that operation jointly as an event venue and restaurant would increase sales as a basis for higher rent during the extension period. State Room charged that the landlord's position served as a pretext for termination of the lease and conversion of the premises to more profitable office space.

[4]All three appointees were established real estate brokerage companies. State Room designated Cushman & Wakefield, Inc.; the landlord selected CB Richard Ellis, Inc.

[5]Colliers, Meredith & Grew.

[6]State Room's complaint acknowledges that it informed its·designated appraiser of the Superior Court decision. The Superior Court decision did not generate an appeal.

[7]If sales were to reach a specified "breakpoint," an incremental percentage of sales would supplement the rate per square foot.

lease clause did not authorize reconsideration and declined any reappraisal in the absence of a "judicial command."

In early October, 2011, State Room brought the present action in Superior Court for a declaration of the invalidity of the rental rate and an order compelling a reappraisal. It alleged that the appraisers had committed serious errors in their computations, especially (1) the mistaken assumption of the rental area as only the 19,126 square feet defined by the 1990 lease document rather than the 32,792 square feet actually rented under the combined leases of 1990 and 1994; and (2) the incorrect use of first-class, smaller, ground-level, Boston-area restaurants as facilities "comparable" to its event venue operation.

A judge of the Superior Court allowed the landlord's motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) on independent alternative grounds of (i) the unreviewability of the appraisal result, and (ii) State Room's waiver of its claim by reason of its payment of the increased rate from May 1, 2010, to November 30, 2010, without objection to the appraisal reports rendered in August of 2009, fifteen months earlier.

*Analysis.* 1. *Standard of review.* An appellate court reviews de novo a rule 12(b)(6) dismissal. See *Lopez* v. *Commonwealth*, 463 Mass. 696, 700 (2012); *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011). We accept as true all well pleaded allegations of the complaint, plausible information of incorporated exhibits, and reasonable inferences. See *Schaer* v. *Brandeis Univ.*, 432 Mass. at 477; *Vranos* v. *Skinner*, 77 Mass. App. Ct. at 282 n.3. However, the appearance on the face of the complaint or its incorporated materials of information constituting a conclusive affirmative defense will justify dismissal. See, e.g., *Woodcock* v. *American Inv. Co.*, 376 Mass. 169, 173-174 (1978) (statute of limitations); *Bagley* v. *Moxley*, 407 Mass. 633, 637-638 (1990) (issue preclusion); *Daniels* v. *Contributory Retirement Appeal Bd.*, 418 Mass. 721, 722 (1994) (failure to exhaust administrative remedies).

2. *Reviewability of appraisal.* By common-law rule in Massachusetts, courts review the correctness of an appraisal contractually authorized by the parties only for alleged "fraud, corruption, dishonesty or bad faith." *Eliot* v. *Coulter*, 322 Mass.

86, 91 (1947), and cases collected at 89-90.[8] An appraisal process is an agreed reference to a third party or parties, most typically for a determination of a value. The premise of the rule of restricted reviewability is that the contracting parties' assignment of a valuation to an appraisal embodies their shared desire for finality. An appraisal results from an agreement. By contrast, an arbitration is an agreed reference to a neutral decision maker for resolution of a claim or conflict.[9] It results from a dispute. See *id.* at 89-91. "But just as an arbitrator may exceed his authority by granting relief which is beyond the scope of the

---

[8]See *Krauss* v. *Kuechler*, 300 Mass. 346, 349 (1938), quoting from *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 153 (1894) (reviewing challenge to stock valuation, and stating that "[i]t is settled that one may agree to sell his property at a price to be determined by another, and that he will be bound by the price so fixed, . . . [so long as] no fraud or bad faith is shown"). Limited reviewability of the result of an agreed appraisal process is the rule in numerous jurisdictions. The following cases reflect the chronological development of the rule: *King* v. *Dayton*, 18 Ohio Dec. 567, 576-577 (1907) (requiring fraud, "great oppression," or abuse of discretion on part of appraisers for court intervention); *Ice Serv. Co.* v. *Henry Phipps' Estates*, 245 N.Y. 393, 396 (1927) (appraisers' report "must be final, in the absence of fraud or a clear misconception of their duties," especially where parties agreed to make action of appraisers final); *Hegeberg* v. *New England Fish Co.*, 7 Wash. 2d 509, 526-527 (1941) (citing 3 Williston on Contracts § 802 as "general rule" that "in the absence of mistake, arbitrary or capricious action, or fraud," value fixed by appraisers is conclusive upon parties); *Berry* v. *Asphalt Paving Co.*, 146 Colo. 112, 116 (1961) (where agreement was clear and unambiguous, accountant's determination was not subject to review in absence of fraud or bad faith); *Hirt* v. *Hervey*, 118 Ariz. 543, 545-546 (Ct. App. 1978) (same); *Brindle* v. *Brindle*, 436 A.2d 718, 719-720 (R.I. 1981) (same, citing to *Eliot* v. *Coulter*, *supra*, and referring to rule as "well-established principle"); *AIU Ins. Co.* v. *Lexes*, 815 A.2d 312, 314 (Del. 2003); (same, citing to the principle as reiterated in *Cambridge St. Metal Co.* v. *Corrao*, 30 Mass. App. Ct. 150, 155 [1991]).

See also 14 Williston on Contracts § 42:29 (4th ed. 2000) ("In the absence of fraud or mistake, the price fixed by agreed appraisers is conclusive upon the parties. Although an excessively large or an unreasonably small price involves some element of penalty or forfeiture, this fact in itself is not enough to overcome the express terms of the contract, in the absence at least of fraud, gross mistake, or such arbitrary conduct as is completely outside what the parties could have reasonably contemplated").

[9]The common-law principle restricting judicial review of appraisal results parallels the statutory analogue of the Uniform Arbitration Act, G. L. c. 251, § 12(*a*)(1), (3), limiting judicial vacation of arbitration awards to instances of corruption, fraud, or other undue means, and to awards in excess of arbitral authority.

arbitration agreement, . . . so too an appraiser can exceed his authority by making an award which is not within the limits of the submission to him. *The issue turns on the agreement of the parties"* (emphasis supplied). *Cambridge St. Metal Co.* v. *Corrao,* 30 Mass. App. Ct. 150, 155 (1991), citing *Dynan* v. *Fritz,* 400 Mass. 230, 240 n.14 (1987).

A judge reviewing the validity of an appraisal must first inspect the enabling language of the parties' agreement to locate the boundaries of the appraiser's authority. If the language specifies criteria or a formula for the valuation, the judge will determine whether the appraiser operated within the boundaries of those standards. Appraisal work and results occurring within those limits, or intra vires, even if allegedly mistaken, remain immune from review. Work and results passing beyond the prescribed criteria or formula, or ultra vires, are reviewable for invalidation, modification, or other appropriate legal or equitable remedy. See *Cambridge St. Metal Co.* v. *Corrao, supra* at 156-160 (voiding one component of appraiser's valuation of closely held stock as adjustment unauthorized by formula of governing stock purchase agreement and ordering remedial computation); *Alperin* v. *Eastern Smelting & Refining Corp.,* 32 Mass. App. Ct. 539, 545-550 (1992) (voiding unauthorized adjustments by appraising accounting firm in pricing formula set by contract governing sale of closely held stock shares).

3. *Application.* In this instance, State Room alleges that the appraisers deviated so drastically from the valuation criteria of the lease as to exceed their authority and to expose their valuation to judicial review and reversal.[10] It alleges two categories of deviation and error resulting in an overstatement of rent by approximately forty percent: the use of disparate first-class restaurants as facilities "comparable" to State Room's event venue facility, and the underestimation of the rental area as only 19,126 square feet.[11] State Room contends that first-class restaurants operate more profitably than event venues and pay

---

[10]State Room presents no claims of fraud, corruption, dishonesty, or bad faith by the appraisers.

[11]State Room did not append the allegedly faulty reports of the three appraisers to the 223 pages of exhibits attached to its complaint. In *Cambridge St. Metal Co.* v. *Corrao, supra* at 158, the summary judgment materials included the appraiser's report; in *Alperin* v. *Eastern Smelting & Refining*

an accordingly higher rent and thus are not fairly comparable. It contends further that the use of the mistakenly small State Room area (as a denominator) would cause the sales per square foot to become artificially high and to bring it into comparison with more profitable restaurants likely paying higher rents by reason of that greater profitability. In sum, State Room charges that the appraisers' market study lacked the necessary premise of comparability.

We ask first whether such errors could carry the appraisers beyond the scope of the authority delegated to them by the lease's rental rate criteria. The criterion most directly related to State Room's argument is the "fair market rental values for other first-class restaurant facilities in Boston with comparable sales per square foot and comparable average billing per person served."

First, and most obviously, the appraisers' consultation of first-class restaurant rental rates would comply literally with the directive of the lease. It would not have exceeded their assigned authority. The parties never amended the lease so as to limit the comparable facilities strictly to event venue facilities.

Second, the alleged miscalculation of the State Room area would constitute a mistake within, and not beyond, the determination of "sales per square foot." An error within the appraisers' authorized responsibility is unreviewable.[12]

Third, the appraisal clause of the lease includes a safety mechanism in the interest of fairness: "Each appraiser shall consider the following factors (*but shall not be limited to such*

Corp., *supra* at 548, in the course of a jury-waived trial, the defendant did not contest that the appraiser had not followed the contractual pricing formula.

The landlord contests State Room's allegation that the appraisers misunderstood the true rental area. We accept that claim only as an allegation under rule 12(b)(6) standards.

[12]See *NCS Mgmt. Corp.* v. *Sterling Collision Centers, Inc.*, 108 S.W.3d 534, 538 (Tex. Ct. App. 2003) ("[R]ather than exceeding its authority by failing to follow the calculation method specified in the contract, the appraiser merely applied that method in a manner with which [plaintiff] disagrees").

State Room cites *Steiner* v. *Appalachian Exploration, Inc.*, 31 Ohio App. 3d 177, 179 (1986), and *Chatterton* v. *Business Valuation Research, Inc.*, 90 Wash. App. 150, 157 (1998), in support of its contention that we may set aside an appraisal if the appraiser conducted it on a "fundamentally wrong basis" or by a "manifest mistake." We do not interpret the rule in Massachusetts to permit "mistake" as a basis for reviewing an appraisal, so long as the appraiser followed the procedure and standards prescribed by the contract.

*factors*) in reaching his determination of the fair market rental value of the Premises" (emphasis supplied). That authorization greatly expands their range of consideration. At least three sources of information were available to guide them to genuinely "comparable" facilities. First, the "permitted uses" clause allowed not only operation of a first-class restaurant, but also of "private dining rooms, and uses directly related thereto including function room(s) . . . and such other uses as Landlord may in the future approve." Second, in its complaint, State Room acknowledged that it had informed its designated appraiser of the favorable outcome of the prior litigation establishing its right to operate exclusively as an event venue. Third, at oral argument of this appeal, counsel for all parties reported that the parties had maintained the opportunity to submit pertinent information to the appraisers during the valuation process.

In short, the broad catch-all clause and the undisputed availability of all circumstantial valuation factors to the appraisers not only cast doubt upon the claim of errors, but also negate the charge that they wrongfully exceeded their authority. State Room's claim, at most, is that the appraisers committed errors within their authority, not that they engaged in action beyond it. The motion judge correctly entered judgment of dismissal as a matter of law by reason of the unreviewability of the appraisal, a conclusive affirmative defense evidenced on the face of the complaint.[13]

*Judgment affirmed.*

---

[13]The judge allowed the motion to dismiss under rule 12(b)(6) on the independent, alternative ground of waiver. From the complaint, he concluded that State Room's payment of the appraised rent from May 1, 2010, onward, and its failure to object to the August, 2009, appraisal throughout the fifteen months until November 30, 2010, amounted to acceptance of the new rent and waiver of the present claim.

"Waiver is the intentional relinquishment of a known right." *Normandin* v. *Eastland Partners, Inc.*, 68 Mass. App. Ct. 377, 388 (2007), quoting from *Niagara Fire Ins. Co.* v. *Lowell Trucking Corp.*, 316 Mass. 652, 657 (1944). On appeal, State Room argues that it need not have objected earlier because the lease contained a nonwaiver clause (requiring any waiver to be written and signed by the waiving party), and because any withholding of rent would have exposed it to the claim of default. The landlord points out that State Room might still have paid the rent under protest or reservation of rights, but failed to do so.

In these circumstances in which State Room's credibility and intent are material facts, we do not affirm the dismissal as a matter of law upon the ground of waiver.