Fecteau, J.
*296 INTRODUCTION
This is an insurance coverage case. On August 2, 1994, plaintiff filed an amended complaint against defendant arising from a motor vehicle accident. Plaintiff alleges breach of the insurance contract, negligence, unfair claim settlement practices under G.L.c. 176D, §3(9), and unfair and deceptive trade practice under G.L.c. 93A, §§2 & 9. On November 8, 1994, plaintiff, as assignee of the rights of Ellingwood Construction Company (“Ellingwood”), filed a complaint against defendant alleging the above claims as well as fraud and violations of chapter 93A, §11. Plaintiff and defendant now move for summary judgment on all counts of plaintiffs consolidated claims. For the reasons stated below, defendant’s motion is ALLOWED in part and DENIED in part. Plaintiffs motion is DENIED.
FACTS
The summary judgment record reveals the following undisputed facts.
I.The Accident
On December 1, 1987, a dumptruck collided with Peter T. Klein’s (“Klein") car on Pleasant Street in Framingham, Massachusetts. Klein suffered serious injuries. A DeAngelis & Sons (“DeAngelis”) employee, William T. Daly (“Daly”), drove the dumptruck, which was also owned by DeAngelis. Daly and the truck were on loan to Ellingwood, which intended to utilize him for the day in repayment of a previous loan of paving equipment from Ellingwood to DeAngelis.
II.The Fireman’s Fund/Ellingwood Insurance Policy
From February 25, 1983 through February 25, 1988, the Fireman’s Fund Insurance Companies/The American Insurance Company (“Fireman’s Fund”) issued annual Massachusetts Combination Motor Vehicle Policies to Ellingwood. Fireman’s Fund issued these policies through the Jewell Insurance Agency (“Jewell”) and Robert Fair (“Fair”), Jewell’s agent. Fair issued Certificates of Insurance (“certificates”) to Ellingwood during the 1985-1986 policy period which indicated coverage under Hired Auto and Non-Owned Auto endorsements (“endorsements”).
The Hired Auto endorsement provides, in pertinent part, “(t]he insurance applies only to the use ... in such business, by an employee of the named insured, of any non-owned automobile of the commercial iype if such use of such automobile is occasional and infrequent.” The Non-Owned Auto Endorsement provides, in pertinent part, “[t]he words ‘hired automobile’ shall mean a land motor vehicle, trailer or semi-trailer used under contract in behalf of, or loaned to, the named insured ...”
On March 9, 1987, Ellingwood asked Fireman’s Fund by letter to recognize the Nickerson Agency (“Nickerson”) as Ellingwood’s new agent of record. During the 1987-1988 policy year, Nickerson issued five certificates indicating “Any Auto” coverage. The “Any Auto” designation did not appear as an option on the prior, Fair issued, certificates of 1985-1986.
In May or June, 1987, Fireman’s Fund issued a new Massachusetts Combination Motor Vehicle Policy to Ellingwood (“policy”). The policy’s “Definitions” section of the “Conditions Applicable to [the coverage agreement]” defines an “Insured Motor Vehicle,” in pertinent part, as a vehicle “described in this policy for which a specific premium charge is made ...” The same section defines a “temporary substitute motor vehicle” as one “temporarily used ... as a substitute for the insured motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.”
Since at least the beginning of this litigation neither Ellingwood nor Fireman’s Fund have been able to locate the original Ellingwood policy. No original record of the policy contents and/or endorsements issued, if any, are available.
III.Prior Proceedings
In 1989 Klein, his wife and minor child sued multiple defendants, including Ellingwood, in Middlesex Superior Court, for personal injuries arising from the accident. The jury found for the plaintiffs and judgments were entered for $3,383,950.50 in favor of the Kleins, the majority of which remains unpaid. The jury found that Daly, on the day of the accident, was Ellingwood’s “agent, servant, or employee.”
In June, 1994, Klein filed a third-party beneficiary action in Worcester Superior Court (C.A. 94-1236) against Fireman’s Fund. Klein later obtained an assignment of Ellingwood’s rights and filed another action in Worcester, as Ellingwood’s assignee, against Fireman’s Fund (C.A. 94-2525). The consolidated actions allege breach of contract, negligence, fraud, and violations of G.L.c. 93A and 176D.
Discussion
The court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating and essential element of the non-moving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 *297 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The non-moving party cannot defeat the motion for summary judgment by resting on its pleadings and move assertions of disputed facts . . .” Lalonde v. Eisner, 405 Mass. 207, 209 (1989). A court will grant summary judgment to the party entitled to judgment as a matter of law if both parties have moved for summary judgment and “there is no real dispute [concerning] the salient facts” or if the case only involves a question of law. Cassesso v. Commissioner of Correction, supra.
I. Evidentiary Burdens
Fireman’s Fund argues that Klein bears the burden of proving the existence of the policy, specifically the endorsements, as well as coverage under the policy and endorsements for the accident. Fireman’s Fund asserts that “[i]f Klein contends that the Endorsements were issued, then he is essentially claiming coverage under a lost insurance policy." (Fireman’s Fund’s Mem. Supp. Summ. J. at 12.) Fireman’s Fund claims that Massachusetts law requires Klein to prove a lost policy’s “existence, loss and contents by clear and convincing or strong and conclusive evidence,” citing Eastern Enterprises v. Hanover Ins. Co., Civil No. 93-01458, 4 Mass. L. Rptr. 257 (Middlesex Super. Ct. August 18, 1995), and authorities cited therein.
Insofar as Klein’s claim of coverage under the endorsements is one under a lost insurance policy, Klein agrees with Fireman’s Fund: “. . . Fireman[’]s Fund is correct in its assertion that Klein is claiming coverage under a lost insurance policy, i.e. the missing endorsements. As such, the Plaintiffs claim presents a classic case of proof of the contents of the lost insurance policy.” (PI.[’s] Mem. Op. Def.[’s] Mot. Summ. J. and Supp. Pl.[’s] Mot. Summ. J. at 27-28) (“Pl.’s Mem.’’)[1] However, Klein disagrees that he must prove the existence of the endorsements by clear and convincing evidence. Klein argues that the clear and convincing standard applies at trial, not at summary judgment.
Klein is correct. For Klein to defeat Fireman’s Fund’s Motion for Summary Judgment, Klein must show, by reference to specific facts, the existence of a genuine issue of material fact. The clear and convincing standard for lost policies applies at trial, if at all.[2] Since this is a motion for summary judgment, the court need not determine by what standard Klein must show the policy’s existence at trial.
II. Breach of the Insurance Contract
In Count I of each of his consolidated actions, Klein claims Fireman’s Fund breached the insurance contract. In his lengthy memoranda in opposition to Fireman’s Fund’s motion for summary judgment,[3] Klein asserts several theories for recovery under the insurance contract and about which he asserts there exists genuine issues of material fact. Klein first argues that genuine issues exist regarding whether Fireman’s Fund issued the endorsements. Klein also claims that genuine issues exist concerning whether Daly was Ellingwood’s “employee” on the day of the accident and whether the dumptruck driven by Daly was a “hired automobile" in order to fall under the endorsement’s coverage. Klein further pursues an estoppel theory against Fireman’s Fund, maintaining that genuine issues exist insofar as Fireman’s Fund allegedly allowed Klein to detrimentally rely on Fireman’s Fund and/or its agent’s statements and actions, particularly Fair’s and Nickerson’s insurance certificates, concerning coverage.
Finally, Klein contends that genuine issues exist as to whether the dumptruck falls under the temporary substitute vehicle provisions of the policy, and is thereby covered. This last claim also forms the basis for Klein’s motion for summary judgment against Fireman’s Fund on his contract claims.
1. Issuance of the Non-ownership and Hired Automobile Endorsements
Fireman’s Fund argues there is no genuine issue that Ellingwood’s insurance contract with Fireman’s Fund at the time of the accident did not include the endorsements. First, Fireman’s Fund says that its policy extends only to vehicles listed on the declaration pages. Since the dumptruck in question is not listed in the declaration pages, Fireman’s Fund reasons, it is not covered. Second, Fireman’s Fund asserts that there is no genuine issue that it did not issue the endorsements because: 1) Ellingwood does not have a copy of either endorsement; 2) no one ever saw either endorsement; 3) Nickerson testified that Fireman’s Fund never issued the endorsements; 4) neither Nickerson nor Fireman’s Fund ever billed Ellingwood for the endorsements.
In a twenty-four page section of his memorandum in opposition, Klein offers a number of facts which, he argues, create genuine issues as to whether Fireman’s Fund issued the endorsements. Nickerson, in his opposition to Fireman’s Fund’s motion, echoes most of Klein’s arguments.
First, Klein notes, Fireman’s Fund’s witness, Russell Maida, the General Adjuster for Fireman’s Fund (“Maida”), testified that Fireman’s Fund sometimes issues policies without the endorsements necessarily mentioned in the declaration pages. In other words, according to Klein, simply because the declaration pages do not mention the endorsements does not mean Fireman’s Fund did not issue them.
Second, Klein points out that neither Fireman’s Fund nor Fair possess or can find the Ellingwood underwriting file, which is therefore lost. To prove a lost policy, Klein argues, he can offer secondary evidence regarding the material terms of the policy (i.e., the endorsements). As secondary evidence, Klein points to the following evidence: 1) the certificates from 1984 and 1985 indicating Fireman’s Fund issued endorsements in those years;[4] 2) Fair’s testimony that *298 he always recommended coverage under the endorsements and would not issue certificates showing the endorsements without ensuring the indicated coverage formed part of the policy; 3) Fair’s testimony that Ellingwood did not request that Fair delete the endorsements and that Fair did not delete any of the coverage for the 1987-1988 policy period;[5] 4) Nickerson’s testimony that he did not delete any coverage after he took over from Fair as Ellingwood’s agent; 5) the Nickerson-issued certificates for the 1987-1988 policy year indicating “Any Auto” coverage (Klein offers the testimony of two insurance experts who testified that “Any Auto” coverage includes, as a sub-categoiy, coverage under the endorsements); 6) Fireman’s Fund’s admission that it possesses no record showing whether Ellingwood was billed for the endorsements or not; and, finally, 7) Ellingwood’s testimony that he applied for coverage under the endorsements and that, according to a Fireman’s Fund’s witness, an application for coverage becomes part of the coverage.
The issue here is whether, as a matter of law, the court should find that Fireman’s Fund did not issue the endorsements. Interpretation of contract terms is a question of law for the court. Lumberman’s Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 465 (1995). However, the existence of a contract is ordinarily a fact question for the jury. American Private Line Serv. v. Eastern Microwave, 980 F.2d 33, 35 (1st Cir. 1992). Similarly, the juiy also determines whether a lost policy included a specific clause and whether the parties complied with such a clause. 19 Couch on Insurance 2d §79:131 (1983); Monjeau v. Metropolitan Life Ins. Co. 208 Mass. 1, 9-10 (1911). It follows that “when the court is satisfied that an original document is not available, the party seeking to prove the content may offer secondary evidence to determine the content of a contract.” Polaroid Corp. v. Rollins Environmental Serv., 416 Mass. 684, 690 (1993).
The court is satisfied that the Fireman’s FundEllingwood underwriting file for 1987-1988 is lost. And, according to Maida, without looking at Ellingwood’s lost underwriting file it is difficult to tell for certain whether or not Ellingwood’s coverage included the endorsements. Therefore, Klein would be entitled to provide secondary evidence at trial regarding the endorsements. Here, Klein need only provide enough secondary evidence to show a genuine issue of material fact as to their issuance. He has done so.
Specifically, the insurance certificates (both pre1987 and for 1987-1988), the testimony of Ellingwood, Fair, Nickerson, Maida and the various experts, create genuine issues of fact appropriate for a jury.[6] Further, Fireman’s Fund’s inability to produce the underwriting file and show that Fireman’s Fund did not issue the endorsements creates added confusion necessitating a jury trial.[7] In conclusion, though the evidence that Fireman’s Fund issued the endorsements is far from overwhelming, there is sufficient evidence to warrant, out of an abundance of caution, denial of Fireman’s Fund’s motion for summary judgment on counts I of the consolidated actions on the grounds of Fireman’s Fund’s non-issuance of the endorsements.
2. Coverage under the endorsements for Klein’s accident
Fireman’s Fund argues that even if there is a genuine issue concerning issuance of the endorsements, it is still entitled to summary judgment because the endorsements do not cover Klein’s accident as a matter of law. Specifically, Fireman’s Fund argues that Daly was not an employee of Ellingwood on the day of the accident and therefore the “Employer’s Non-Ownership Liability” endorsement does not cover the accident. Fireman’s Fund also argues that the “Hired Automobile" endorsement does not cover Klein’s accident because there was no rental or lease agreement.
a. The “Employer’s Non-Ownership” endorsement
Fireman’s Fund asserts that an “employee” for purposes of the endorsement refers to a person who regularly works for the insured and is on the payroll for withholding and insurance purposes. Fireman’s Fund further argues that an employee of a subcontractor, an analogous situation to the facts here, would not come within the scope of the endorsement. Fireman’s Fund cites Klein’s insurance expert, Victor Fanikos (“Fanikos”), legal counsel at the Massachusetts Division of Insurance for tweniy-one years, for this proposition.
Fireman’s Fund also notes that the other endorsement at issue, the hired automobile endorsement, specifically references certain exclusions for an “employee or agent . . .’’ of the insured. Therefore, if Fireman’s Fund intended the non-ownership endorsement to apply to non-employee agents of the insured, it would have drafted it accordingly, as it did with the hired automobile endorsement. Since DeAngelis, not Ellingwood, “employed” Daly under the terms of the endorsement (Daly was on DeAngelis’, not Ellingwood’s, payroll), Fireman’s Fund argues, the endorsement does not apply.
Klein responds by arguing that there is nothing in the non-ownership endorsement which requires such a “narrow” definition of the endorsement language. Klein also argues that Fireman’s Fund can’t “ignore” the juiy’s specific finding at the Klein-Ellingwood trial that Daly was an “agent, servant or employee” of Ellingwood at the time of the accident. Klein contends that Fireman’s Fund is therefore collaterally estopped from claiming Daly was not Ellingwood’s “agent, servant or employee,” since an insurer afforded an opportunity to defend the insured who fails to do so may not relitigate coverage determined in the underlying litigation, citing Camp Dresser & McKee v. Home Insurance Co., 30 Mass.App.Ct. 318 (1991).
*299 Klein offers the testimony of Joseph DeAngelis, Jr. who testified that Klein was “working for Billy Ellingwood at the time” of the accident. (Pi’s Mem. at 51.) Nickerson adds that a genuine issue of material fact “naturally follows” from the jury’s finding and queries why, if Daly’s status as a non-employee of Ellingwood’s is so dear, the jury found that he acted as Ellingwood’s “agent, servant or employee.” (Third Party Def.’s Mem. Opp. Def.’s Mot. Summ. J. at 17.)
As noted supra, interpretation of contract terms is a question of law for the court. Lumberman’s Mutual Casualty Co., 419 Mass. at 465. Whether or not contractual ambiguity exists is also generally a matter of law for the court. Wyner v. North American Specialty Ins. Co., 78 F.3d 752, 754 (1st Cir. 1996). The court should interpret an unambiguous contract in such a way that no word or phrase is made meaningless by interpreting another word or phrase. Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995). Where the same word occurs more than once in a written instrument, the court should give the same meaning to the word unless the context demands a different meaning. Dana v. Wildey Sav. Bank, 294 Mass. 462, 466 (1936). However, where contract language is ambiguous, its meaning normally becomes a matter for the fact finder. Den Norske Bank AS v. First Nat. Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996).
The insurance contract uses the word “employee” in two different endorsements. In order to not render “agent” redundant in the hired automobile endorsement, “employee” in the non-ownership endorsement must necessarily exclude agents, since both are specifically referenced in the hired automobile endorsement. In other words, “employee” must be construed the same for each endorsement.
The court finds the word “employee” in the endorsements to unambiguously exclude agents. According to the undisputed evidence Daly was, at best, a subcontractor or agent of Ellingwood, not an employee or servant,[8] and therefore even if Fireman’s Fund issued the non-owned endorsement it would not cover this situation as a matter of law. Further, since the jury in the Klein-Ellingwood action did not specifically determine that Daly was Ellingwood’s employee or servant, Klein’s collateral estoppel argument also fails as a matter of law.[9]
Finally, even if the endorsements were ambiguous and therefore appropriate for a fact finder, Klein and Nickerson fail to point to any specific facts refuting Klein’s own expert that an “employee” under the insurance contract is narrowly construed to persons on the payroll. Thus, even as a factual matter, Klein fails to meet his burden to defeat Fireman’s Fund’s summary judgment motion as to this issue. Therefore, since, as a matter of law, Daly was not Ellingwood’s employee on the day of the accident, Fireman’s Fund’s motion for summary judgment as to the employer non-ownership endorsement is allowed.
b. The Hired Automobile Endorsement
Fireman’s Fund argues that this endorsement only extends coverage to vehicles that the insured rents or leases under contract. Fireman’s Fund cites two expert witnesses, Fanikos and John Garaventa (“Garaventa”) (Fireman’s Fund’s Director of Claims Audit) to support this proposition. Fanikos testified that in order to fall under hired automobile coverage “[y]ou have to have some sort of contract for hire ...” or otherwise document the transaction. Garaventa testified that without a contract for the rent or lease of the vehicle, hired auto coverage does not apply. Klein argues that the endorsement includes “loaned” vehicles, and the DeAngelis dumptruck fits within the definition of a loaned vehicle. Klein cites Patricia Litchenfels (“Litchenfels”) (Fireman’s Fund’s Product Manager — General Liability) and Maida. Litchenfels testified that the form of the agreement is irrelevant and in this case the dumptruck would be covered as a loaned vehicle. Maida purportedly testified that the endorsement covers loaned vehicles.[10]
As noted supra, interpretation of the endorsement’s terms is a question of law for the court. Lumberman’s Mutual Casualty Co., 419 Mass. at 465. Justice, common sense and probable intent of the parties guide the court in its interpretation of the endorsement. Fried v. Fried, 5 Mass.App.Ct. 660, 664 (1977). Further ambiguities are resolved against Fireman’s Fund, which drafted the endorsement. Canam Steel Corp. v. Bowdoin Const. Corp., 34 Mass.App.Ct. 943, 944 (1993).
The language of the hired automobile endorsement implies two situations, involving a hired automobile or a loaned one, both of which allow for coverage. The essence of Fireman’s Fund’s argument and supporting testimony is that the endorsement covers only hired vehicles and excludes loaned vehicles. A common sense reading of the Fireman’s Fund drafted endorsement belies this interpretation. Surely Fireman’s Fund could have limited the language in the endorsement to vehicles “used under contract" if it intended such limited coverage. Instead, Fireman’s Fund included the language “or loaned to [the insured].” Based on the undisputed facts the court finds, as a matter of law, that the DeAngelis dumptruck was a “loaned” motor vehicle under the hired automobile endorsement. See Vickodil v. Lexington Ins. Co., 412 Mass. 132, 138 (1992) (“Summary judgment, when appropriate, may be rendered against the moving party,” citing Mass.R.Civ.P. 56(c)). Therefore, if, at trial, the fact finder determines that Fireman’s Fund issued the hired automobile endorsement, the DeAngelis dumptruck was a “hired automobile” under that endorsement as a matter of law.
*300 3. Estoppel
Klein, in his action as assignee of Ellingwood’s rights, argues that Fireman’s Fund, based on its actions and those of its alleged agents, is estopped to deny coverage for Klein’s accident. Specifically, Klein claims that the certificates issued-by Fair and Nicker-son, and representations and omissions by the same, induced Ellingwood to reasonably rely on endorsement coverage. Fireman’s Fund argues that Klein was not entitled to rely on the certificates, citing cases which hold that the terms of the policy, not certificate, control the terms of coverage.
“In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm." Royal-Globe Ins. Co., v. Craven, 411 Mass. 629, 635 (1992). Estoppel “necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer.” 16B Appleman, Insurance Law and Practice §9081, at 491-92 (1981). See also Rose v. Regan, 344 Mass. 223, 228 (1962). Estoppel is generally a fact question. Palandijian v. Pahlavi 614 F.Supp. 1569 (D.Mass 1985). Estoppel is a fact question where the evidence will support conflicting inferences. In re Capozzi’s Case, 4 Mass.App.Ct. 342, 347 (1976). See also Jet Line Services, Inc. v. Amerícan Employers Ins. Co., 404 Mass. 706 (1989) (evidence supported jury’s finding that, based on insurer’s conduct, insurer was estopped to deny insured’s coverage).
The evidence shows the parties’ confusion surrounding the meaning of the certificates. There are also disputed factual issues concerning the specific acts and statements of Fair and Nickerson. Specifically, there is evidence that Ellingwood requested the endorsements, was never told he did not have coverage under the endorsements, and never requested their deletion. These factual issues create jury questions insofar as they relate to the reasonableness of Ellingwood’s reliance, if any, on the certificates, as well as the statements and acts and omissions of Fair and Nickerson. Given that estoppel is normally a fact question, the court is unable to say as a matter of law that Ellingwood did not reasonably rely upon Fireman’s Fund’s alleged actions. Therefore, summary judgment is denied as to Klein’s estoppel claim.[11]
III.Negligence
In Count II of his consolidated actions Klein alleges that Fireman’s Fund was negligent in its handling of Klein’s claims. Fireman’s Fund argues that since Ellingwood’s policy does not cover Klein’s accident, Fireman’s Fund could not have breached a duty to Ellingwood or Klein and therefore the court should grant Fireman’s Fund’s motion for summary judgment.
Negligence is usually a fact question for the jury. Irwin v. Ware, 392 Mass. 745, 764 (1984). Here, since there are genuine issues regarding coverage for Klein’s accident, Fireman’s Fund’s argument, that without coverage Fireman’s Fund could not have been negligent, is based on a false premise. Since coverage is disputed, since negligence is normally a fact issue and since Klein sets forth specific facts from which a jury could find that Fireman’s Fund was negligent in handling the claim, Fireman’s Fund’s motion for summary judgment on the negligence counts is denied.
IV.Fraudulent Concealment/Misrepresentation
In Count III of Klein’s action as the assignee of Ellingwood’s rights, Klein claims that Fireman’s Fund’s agent, Nickerson, made false representations to him concerning coverage upon which he reasonably relied to his detriment. Fireman’s Fund argues that since the policy does not cover Klein’s claims, Nickerson’s representations (that the policy did not cover Klein’s accident) were therefore true. It follows, Fireman’s Fund argues, that without coverage, and without false statements, there was no fraud.
To succeed in his fraud claim, Klein must show that Fireman’s Fund and/or Nickerson made false representations of material fact with knowledge of their falsity for the purpose of inducing Ellingwood to act thereon, and that Ellingwood relied upon the representation as true, acting upon it to his detriment. Metropolitan Life Ins. Co. v. Ditmore, 729 F.2d 1, 4 (1st Cir. 1984).
Fireman’s Fund is wrong in its assertion that there is no coverage as a matter of law; again, there are genuine issues as to coverage under the endorsements. Therefore, a showing of disputed facts regarding false statements by Nickerson could defeat Fireman’s Fund’s summary judgment motion on the fraud count. However, Klein fails to point to any facts showing Nickerson acted fraudulently. Specifically, Klein fails to point to any facts showing that Nickerson knowingly concealed information or knowingly made false statements regarding coverage for the purpose of inducing Ellingwood to act in reliance thereon. Indeed, it is far from clear that Klein’s accident was covered at all, much less that Nickerson knew it was covered and concealed the “fact.” Therefore, Fireman’s Fund’s motion for summary judgment on Count III of Klein’s complaint, as assignee of Ellingwood’s rights, is allowed.
V.Chapters 93A and 176D
Klein argues that Fireman’s Fund violated G.L.c. 93A, §§2, 9, (Count IV of his action and V of his action as Ellingwood’s assignee) and Chapter 93A, §11 (Count VI of Klein’s action as Ellingwood’s assignee). Klein’s 93A claims are grounded in Fireman’s Fund’s alleged violations of G.L.c. 176D, §3. Fireman’s Fund asserts that it is entitled to summary judgment on these counts because without coverage under the policy the alleged practices do not violate Chapter 93A. Fireman’s Fund further states that without coverage nothing Fireman’s Fund did caused Ellingwood’s indebtedness to Klein or Klein’s inability to recover on his judgment.
*301 Again, coverage under the éndorsements is a disputed issue of material fact. Also disputed is Fireman’s Fund’s performance of its duty to Ellingwood as its insurer. Since Fireman’s Fund again premises its argument solely on the incorrect assumption that there was no coverage as a matter of law, Fireman’s Fund’s motion for summary judgment on the 93A claims is denied.
With regard to Klein’s separate actions under c. 176D, §3 (Count II of Klein’s claim and Count IV of his claim as Ellingwood’s assignee), Fireman’s Fund’s motion for summary judgment is allowed since G.L.c. 176D does not provide a private right of action. Thorpe v. Mutual of Omaha Ins. Co., 984 F.2d 541, 544 n.1 (1st Cir. 1993) (citing Dodd v. Commercial Union Insurance Co., 373 Mass. 72, 75 (1977)).
VI. Substitute Vehicle Coverage
Klein argues that the “temporary substitute motor vehicle” provision of the policy covers Klein’s accident. Klein claims that since there are genuine issues of material fact relating to whether the dumptruck was a temporary substitute vehicle, and therefore covered on the day of the accident, Fireman’s Fund’s motion should be denied. Klein also moves for summary judgment, contending that temporary substitute vehicle coverage applies to the accident as a matter of law and therefore the court should grant summary judgment on his breach of contract claim.
'As noted supra, interpretation of contract terms is a question of law for the court. Lumberman’s Mutual Casualty Co., 419 Mass. at 465. While ambiguous terms may be appropriate for a jury, whether or not contractual ambiguity exists is also generally a matter of law for the court. Wyner, 78 F.3d at 754.
1. Temporary substitute vehicle coverage and Fireman’s Fund’s motion for summary judgment
Klein argues that Fireman’s Fund erroneously interprets “insured motor vehicles” in the policy as only covering vehicles for which specific premiums are paid and which are described in the declaration pages.[12] Klein points out that there are no specific premium charges for “temporary substitute motor vehicles” anywhere on the declaration pages.[13] Klein infers from this that an “insured motor vehicle” may be one other than the one listed in the policy and for which a specific premium is paid. Klein states “[t]he question remains therefore, whether the DeAngelis truck at the time it was involved in the accident, was being used as a temporary substitute vehicle and was therefore an insured vehicle under the policy issued by Fireman’s Fund. If there is a genuine issue of material fact in this regard, then on this basis alone, Fireman’s Fund’s motion for summary judgment must be denied.” Pl.’s Mem. at 19-20.
The issue here is whether the dumptruck qualifies as a “temporary substitute motor vehicle." The court finds the “temporary substitute motor vehicle" clause unambiguous. The policy clearly states that a “temporary substitute motor vehicle” is one which substitutes for an “insured motor vehicle.” Therefore, for substitute coverage to apply, the replaced vehicle must have been listed in the policy and one for which the insured paid a specific premium (i.e., an “insured motor vehicle”).[14]
The undisputed facts show that Ellingwood deleted the Ford F-600 (the vehicle which the dumptruck replaced on December 1, 1987) from the policy prior to the accident. Since the dumptruck did not replace an “insured motor vehicle” (see discussion infra, at VI.(2)), the court need not address the disputed issue of whether or not the dumptruck was indeed a “substitute" (whether or not the Ford actually broke down or was removed for other reasons). Therefore, as a matter of law, the “temporary substitute vehicle” provision does not cover the DeAngelis dumptruck.
2. Temporary substitute motor vehicle coverage and Klein’s motion for summary judgment
As noted supra. Fireman’s Fund argues that since Ellingwood canceled the Ford’s insurance, and Fireman’s Fund correspondingly issued a refund, prior to the accident, the Ford was not an “insured motor vehicle” at the time of the accident and substitute vehicle coverage does not apply. Klein responds to this argument by pointing out that at the time of the accident the Ford was insured under the “owner-repairman" (“o/r”) endorsement.[15] Klein claims that since the Ford was insured under this endorsement, it was an “insured motor vehicle” and therefore its “temporary substitute,” the dumptruck, was also insured under the “temporary substitute vehicle” provision.
A common sense reading of the policy contradicts Klein’s contention. Again, the policy plainly states that an “insured motor vehicle" is one described in the policy “for which a specific premium charge is made,” or its substitute. The o/r endorsement, on the other hand, covers vehicles narrowly defined as “owned or controlled by the insured ... in the process of being repaired . . . but not otherwise being used in the operation of the principal business.” There is no mention of substitutes in the o/r endorsement. Therefore, the substitute provision clearly only covers vehicles substituting for broken down vehicles which are fully covered as “insured motor vehicles," but not those broken down ones maintaining only o/r coverage.
In sum, a vehicle covered under the owner-repairman endorsement is not an “insured motor vehicle” for purposes of the “temporary substitute vehicle” provision. Therefore, Klein’s motion for summary judgment is denied and, as a matter of law, the “temporary substitute vehicle” provision does not cover the DeAngelis dumptruck. See Vickodil v. Lexington Ins. Co., 412 Mass. at 138.
ORDER
It is therefore ORDERED that:
*302 Defendant’s motion for summary judgment on plaintiffs breach of contract claims, count I of each of plaintiffs consolidated actions, Nos. 94-1236 and 94-2525, is ALLOWED as to coverage under the employer’s non-ownership endorsement and temporary, substitute motor vehicle provision and DENIED as to estoppel and the hired automobile endorsement. It is further ORDERED that partial summary judgment is granted against defendant as to the hired automobile endorsement. Therefore, should the fact finder at trial determine that Fireman’s Fund issued the hired automobile endorsement, the DeAngelis dump truck was, as a matter of law, a “hired automobile” under that endorsement.
Defendant’s motion for summary judgment on plaintiffs negligence claims, count II of each of plaintiffs consolidated actions, is DENIED.
Defendant’s motion for summary judgment on plaintiffs chapter 176D claims, count III of C.A. No. 94-1236 and count IV of C A.. No. 94-2525, is ALLOWED.
Defendant’s motion for summary judgment on plaintiffs chapter 93A claims, count IV of C.A. No. 94-1236 and counts V and VI of C.A. No. 94-2525, is DENIED.
Defendant’s motion for summary judgment on plaintiffs fraudulent concealment claim, count III of CA. No. 94-2525, is ALLOWED.
Plaintiffs motion for summary judgment is DENIED.

 FF, in its reply memorandum, changes its position and asserts that this is not a lost policy case. However, since the undisputed facts clearly show that no party possesses the pertinent policy documents, though they did exist at one time, the court treats this as a lost policy situation.

 As both parties, as well as Judge Cratsley in Eastern Enterprises, acknowledge, the Supreme Judicial Court and the Massachusetts Appeals Court have yet to determine the burden upon those seeking to show the terms of a lost insurance policy.

 Plaintiffs memorandum in support of his opposition to defendant’s motion for summary judgment, at sixty-two pages, well exceeded the twenty-page limit required by Superior Court Rule 9A(b)(4). Despite plaintiffs failure to request leave of this court to exceed the limit, the court considers plaintiffs arguments in full.

 Klein also argues the certificates, along with other alleged FF actions, estop FF from denying coverage. The court addresses this argument infra.

 Based on the court’s review of the record, this is a mischaracterization of Fair’s testimony. Fair testified that he had no memory of either renewing or deleting any coverage— not that “Ellingwood never requested Fair to delete the hired auto or employer non-ownership vehicle coverage,” or that “Jewell never deleted any of the automobile coverages as shown on the 1984-1985 Certificates . . .” (Pl.’s Mem. at 31-32.)

 The court notes that the parties argue different theories regarding the legal impact of the certificates. However, at this juncture the court need not determine whether the certificates are conclusive legal evidence of the policy terms (as Klein argues) or merely evidence of the existence of the policy generally, but carry no weight regarding specific coverage terms (as FF argues). It is enough at the summary judgment stage that Klein offers the certificates and other secondary evidence sufficient to create a genuine issues of material fact as to their issuance.

 That is not to say that Klein is necessarily entitled to an inference in his favor regarding the missing policy, as he argues. Rather, the absence of dispositive legal documents simply compounds the need for a jury to find the facts concerning the alleged endorsements.

 “Servant” is generally considered synonymous with "employee." Black’s Law Dictionary 471 (rev. 5th ed. 1979).

 In order for Klein to have properly invoked the doctrine of collateral estoppel he must have ”establish[ed] that the issue of fact [FF] seeks to relitigate actually was litigated and determined in the [Klein’s] favor in the prior proceeding, and that the determination of that issue was essential to the earlier decision.” Commonwealth v. Bunting, 401 Mass. 687, 691 (1988). For FF to be collaterally estopped, therefore, the jury must have necessarily determined that Daly was Ellingwood’s employee or servant. It did not do so.

 Klein cites Maida’s testimony as appearing at Tab J, page 71 of his appendix. The court is unable to locate page 71, but will assume Klein’s representation, uncontested by FF, is accurate.

 Insofar as FF argues that, as a matter of law, the policy and not the certificates control the terms of coverage, the fact that the policy and endorsements, if any, are missing, underscores the necessity of a jury to weigh the available evidence and assess credibility regarding the words and conduct of FF and Ellingwood, among others. Further, even if the certificates are not legally controlling there are multiple estoppel fact issues involving reliance on them.

 An “insured motor vehicle” is defined as one “described in this policy for which a specific premium charge is made

 A “temporary substitute motor vehicle” is defined as one ”... not owned by the named insured . . . while temporarily used ... as a substitute for the insured motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction.” Massachusetts Combination Motor Vehicle Policy at 5.

 It is important to note that the “temporary substitute motor vehicle" provision is one definition of an “insured motor vehicle." This definition acts as an exception to the general definition of an “insured motor vehicle” and is entirely consistent therewith. As long as a vehicle is used as a temporary replacement for an “insured motor vehicle,” as defined, the replacement itself is an “insured motor vehicle,” and is covered. The fact that the insured does not have to list or pay a specific premium for a "temporary substitute motor vehicle” does not render the requirements of a replaced “insured motor vehicle” meaningless, as Klein argues.

 This endorsement provides: “It is agreed that such insurance as is afforded by the policy for bodily injury liability, for damages for bodily injury caused by uninsured or under-insured automobiles, for property damage liability and for automobile medical payments applies with respect to automobiles operated under the general distinguishing number or mark assigned to the named insured by the registrar of motor vehicles of Massachusetts only while the automobile is owned or controlled by the named insured and is in the process of being repaired, altered, equipped or transferred from one location to another, but is not otherwise being used in the operation of the principal business of the named insured” (emphasis supplied). Massachusetts Owner-Repairman Endorsement.