Gershengorn, J.
Shipley Company, Inc. (Shipley) brought this action against E.l. DuPont DeNemours & Company (DuPont) for damages resulting from a fire allegedly caused by negligence in the bagging and shipment of product sold to Shipley by DuPont. DuPont seeks indemnification and/or contribution from Pine Bluff Warehouse Company, Inc. (PBW) pursuant to a service contract between DuPont and PBW. PBW now moves for partial summary judgment against DuPont on the indemnification and contribution claims on the grounds that the service provided by PBW for DuPont which allegedly caused the fire was not covered by the written contract and thus the contract’s indemnification provision does not apply. PBW also argues that DuPont is not entitled to contribution from PBW because DuPont settled Shipley’s *324 claims against it but failed to discharge the common liability of all alleged tortfeasors as required by G.L.c. 23IB, §3(d). Based on the following, PBWs motion is denied in part and allowed in part.
FACTS
DuPont manufactured and sold to Shipley a chemical compound known as Oxone. On May 5, 1992, Oxone allegedly ignited at Shipley’s warehouse facility leading to extensive damage.
In October 1986, DuPont and PBW entered into a written contract in which PBW agreed to handle and store sodium perborate (also manufactured by DuPont) for DuPont. The 1986 contract was amended several times between 1986 and 1991. These amendments covered, among other things, the storage and rebagging of Oxone into fifty-five- and thirty-five-pound bags.
In May 1991, DuPont and PBW rescinded the 1986 contract and entered into a new contract (the contract) . The Services provision of the contract contains the following language:
This is a Public Warehousing Agreement, the scope of which is further defined in Exhibit “A” covering the receipt, hauling, handling, storage, repackaging, and shipment of DuPont materials and products ... as DuPont elects to provide.
Materials is defined in the contract as any unfinished matter, including packaging supplies, furnished by or on behalf of DuPont to PBW for processing, handling, storage or for use in the production of finished goods. Product is defined as finished goods meeting DuPont specifications that have been produced by PBW from material or furnished by DuPont for handling by PBW. According to its own language, the contract is subject to and governed by DuPont’s general conditions which are attached to the agreement.
According to the contract’s general conditions, PBW agreed to perform its services in a careful workmanlike manner and to take all necessary precautions in the receiving, handling, storage, packaging and shipment of DuPont material and product. All services provided by PBW were to be completed in a manner designed to avoid an unhealthy or unsafe work environment, injuries to persons, damage to property, or pollution. Further, PBW agreed to take all steps necessary to prevent contamination of DuPont material or product when in PBWs care, custody and control. Material and product storage and shipments were to be made by PBW as directed by DuPont’s contract administrator or other designated representative.
The general conditions contain an indemnification clause which states in part:
... (PBW) will indemnify DuPont for all liability, loss and expense incurred by DuPont resulting from any act or omission, negligent or otherwise by (PBW).. . in performance under this Agreement.
The Scope of Work section in Exhibit “A” of the contract states that the agreement covers “warehousing operations services, associated clerical activity, fire protection . . . and inventory management and accountability.” One provision of the Scope of Work section details the rebagging requirements for sodium perborate and Oxone. This provision states that PBW would take Oxone from fifty-five-pound and two-thousand-pound bags and package it into either thirty-five- or fifty-five-pound bags, as directed by DuPont. PBW agreed to ensure that bagger and heat seal units were completely cleaned out when switching from sodium perborate to Oxone and from Oxone to sodium perbo-rate.
The compensation section of the contract sets forth a provision for miscellaneous services which requires approval of DuPont’s contract administrator. The compensation rate for repackaging appears to provide set amounts for repackaging from two-thousand-pound bulk bags into fifty-pound bags only, not thirty-five- or fifty-five-pound bags as listed in the Scope of Work section.
It appears that from approximately January 1992 until May 1992, PBW rebagged the Oxone which DuPont sold to Shipley into twenty-five-pound bags.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation. USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). *325 It is clear from the language of the contract’s Exhibit “A" that rebagging Oxone into twenty-five-pound bags was not specifically listed in the Scope of Work. The general services provision of the contract, however, states that the contract covers the receipt, hauling, handling, storage, repackaging, and shipment of DuPont materials and products as DuPont elects to provide. Furthermore, PBW agreed, under the Scope of Work provision to perform the service of completely cleaning out bagger and heat seal units when switching from sodium perborate to Oxone. The Scope of Work provision was not limited to the enumerated duties listed in Exhibit “A," rather it covered generally “warehousing operations services,” among other things.
The court construes the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose. Id. The repackaging and shipment of Oxone from PBW to Shipley, regardless of bag size, was a service involving the receipt, hauling, storage, repackaging and shipment of DuPont products. The act of cleaning out the bagger and heat seal units after switching from sodium perborate to Oxone was also a service to be provided by PBW under the contract and in fact was specifically listed in Exhibit “A.” Another service to be provided by PBW under the contract was the prevention of contamination of DuPont product when in PBWs care, custody and control.
PBW agreed to indemnify DuPont for all liability resulting from any act or omission by PBW in performance under the contract. If in fact DuPont can prove that PBW failed to clean out the bagger and heat seal units after switching from sodium perborate to Oxone or failed to prevent contamination of Oxone while it was in PBWS care, custody and control, then such indemnification provision would apply. Accordingly the contract applies to the alleged acts of PBW and summary judgment is denied as to the indemnification claim.
PBW argues that DuPont is precluded from bringing a claim for contribution from PBW because DuPont failed to discharge the common liability of all joint tortfeasors. The release given by Shipley to DuPont in settlement of Shipley’s claims against DuPont states that such releases do not operate as a release of liability in favor of PBW. DuPont seeks contribution on the basis that DuPont and PBW are joint tortfeasors and that DuPont has paid more than its pro rata share.
Where there is no judgment against a joint tortfea-sor for the injury, the tortfeasor’s right of contribution shall be barred unless he has either discharged by payment the common liability of the joint tortfeasors, or agreed to discharge the common liability of the joint tortfeasors while the action is pending. G.L.c. 23IB, §3(d). The contribution statute is aimed at eliminating the unfairness of allowing a disproportionate share of plaintiffs recovery to be borne by one of several joint tortfeasors. A.L. v. Commonwealth, 402 Mass. 234, 247-48 (1988). The object of the statute is equitable distribution of the burden among those liable in tort. Id.
DuPont agreed to pay Shipley $3.45 million in return for a release of Shipley’s claims against DuPont. Such settlement avoided litigation of the claims, however it also prevented the benefit of having the court adjudge the proportion of damages DuPont was responsible for in comparison with PBW. DuPont chose to pay a sum certain in order to settle Shipley’s case. DuPont did not pay more than its pro rata share to release Shipley’s claims against PBW and it cannot now seek contribution from PBW as if it had paid for such release. See G.L.c. 231B, §3(d). Although DuPont paid Shipley for an assignment of Shipley’s rights against PBW such assignment does not entitle DuPont to contribution from PBW but rather entitles DuPont to any amount for which PBW may be held liable to Shipley.
If DuPont chooses to negotiate a release of Shipley’s claims against PBW, it may then bring a claim for contribution against PBW. Accordingly, PBWs motion for summary judgment on DuPont’s claim for contribution is allowed without prejudice to allow DuPont the opportunity to release PBW on behalf of Shipley.
ORDER
Based on the following, it is ORDERED that Pine Bluff Warehouse Company, Inc.'s motion for partial summary judgment is DENIED as to DuPont’s claim for indemnification and ALLOWED without prejudice as to the claim for contribution.