Hinkle, J.
This matter is before the court on the motion of the defendants, Sales Consultants of Boston, Inc. (“SCB”) and its President, Robert G. Stockard, for summary judgment. Plaintiff Brian Locke alleges retaliatory discharge in breach of G.L.c. 151B, §§4(4), 4(4A) and 4(5) (Counts I — III), wrongful termination (Count IV) and non-payment of wages under G.L.c. 149, §§148 and 150 (“the Wage Act”) (Count V).
After hearing, for reasons set forth below, the motion for summary judgment is ALLOWED on the Civil Rights Act and Wage Act claims and DENIED on the wrongful termination claim.
BACKGROUND[2]
A. Plaintiffs Hiring
As a personnel placement company, SCB searches for employee-candidates and places them, as permanent employees, with employer-clients. For its services SCB is paid a fee by the client based upon successful placement of a candidate. At all relevant times, Stockard served as SCB’s President and as President of Sales Staffers International, Inc. (“SSII”), which provides temporary but not permanent placements.
In January 1997, Stockard hired plaintiff as an SCB Account Executive. Plaintiff had responsibility for attracting clients and recruiting qualified candidates for placement. As each Account Executive at SCB is assigned to a specialty, plaintiff was assigned to the software industry. He, therefore, focused most of his work at SCB on recruiting software candidates.
On January 3, 1997, SCB and plaintiff executed an Account Executive Employment Agreement (the “Agreement”) setting forth, among other things, plaintiffs compensation. The Agreement provides that plaintiff would be paid a base salaiy of $20,000 plus quarterly commissions on a sliding scale ranging from 5 to 25 percent of SCB’s “net cash-in,” depending on volume. Agreement A ¶ 1(a).[3] If there is a “fall off,” i.e. the employee candidate never starts work or leaves during a specified guarantee period, no commission is paid. Under such circumstances, if SCB has already paid the commission, the Account Executive must return it. Kl(d).
If an Account Executive’s employment ends, the procedure changes. In most termination situations, an Account Executive is limited to 10 percent of net cash-in received by SCB within 30 days of the last day of employment, if there has been no fall-off. ¶2&) and (c). If an employee breaches a restrictive covenant in the Agreement or an “apparent danger” exits of such a breach, the commission will be based only on the net cash-in received by SCB on or before the last day the Account Executive works. ¶203).
B. SCB’s Referral of Media One Account to SSII
On April 15, 1997, plaintiff contacted a prospective client, Continental Cablevision/Media One (“Media One”). The Media One contact asked to speak with the owner of SCB, so plaintiff brought the matter to Stockard and made a telephone introduction of Stockard to the Media One contact. After learning that Media One was looking for part-time workers, which *165 was not SCB’s business, Stockard referred the Media One account to SSII, which handles part-time staffing. After the referral, plaintiff did no further work for Media One.
Stockard told plaintiff he would be compensated for the Media One referral and “if it turned into a viable contract, then the cash in would fall into his [plaintiffs] normal commission schedule." Stockard Dep. at 113. Plaintiff assumed he would be compensated under the terms of the Agreement as he would for any placement. Plaintiff Dep. II at 23.
C. The Retaliation Claim
On July 9, 1997, plaintiff attended an awards ceremony in the cafeteria shared by SCB and SSII. There, he witnessed an incident involving two SSII employees, Richard Nardella and Kimberly Balamotis. Plaintiff observed Nardella, then a vice president of SSH, pull a strap on the back of Balamotis’s dress. When Balamotis asked Nardella what he was doing, Nardella said “I’m just trying to tie you up.” Plaintiff Dep. I at 175. Balamotis then asked plaintiff “Did you see that? Now you know what I’m taking about. You’re my witness.” Plaintiff Affidavit ¶24.[4]
Plaintiff subsequently encouraged Balamotis to consult an attorney and went with her to the office of an attorney located in the same building as SCB.
On July 14, 1997, Balamotis complained about Nardella’s conduct to Stockard. Stockard then initiated an investigation and suspended Nardella pending its outcome. After learning that plaintiff witnessed the event, Stockard asked plaintiff to put his observations in writing. Plaintiff submitted his observations on July 15, 1997. Plaintiffs written submission describes what occurred in the cafeteria between Balamotis and Nardella but does not mention her subsequent consultation with counsel. Until Stockard asked plaintiff to record his observations, plaintiff had not mentioned the Balamotis incident to Stockard. ■
D. Plaintiffs Discharge
On July 17, 1997, two days after plaintiff gave his written statement to Stockard regarding the Balamotis/Nardella incident, Stockard told plaintiff that his position was being eliminated. Stockard offered to let plaintiff resign and told him that otherwise he would be terminated. Under these circumstances, plaintiff chose to resign.
Defendants allege plaintiffs position at SCB was eliminated because the software industry was unprofitable and SCB intended to expand its efforts to the medical/pharmaceutical industry. Defendants claim that after elimination of plaintiffs position, SCB neither sought nor hired anyone to recruit in the software industry. Stockard Affidavit ¶7. On September 28, 1997, SCB advertised for an Account Executive. Plaintiff Affidavit ¶5.
E. The Commission Issue
After plaintiffs departure from SCB, SSII received two checks from Media One, one dated July 30, 1997 for $19,323.00, and one dated August 26, 1997 for $3,750.00. Plaintiff was not paid any commission on these amounts.
On August 15, 1997, SCB issued plaintiff a partial commission check for a placement plaintiff made with a company called S2 Systems, Inc. (“S2”). On or about August 20, 1997, plaintiff filed a complaint for nonpayment of wages with the Office of the Attorney General under G.L.c. 149, §148. On or about September 2, 1997, SCB stopped payment on the S2 check. SCB claims that payment was stopped because Stockard learned that there had been a fall off. Stockard Dep. at 90, 94. This fact is disputed. An affidavit of Denise Ward, a human resources manager at S2, states that the candidate in question was hired on June 30, 1997 and employed with S2 as of August 30, 1999.
In addition to claiming he was not paid commissions for the Media One and S2 accounts, plaintiff contends that he is owed commissions for two placements he made with a company known as “RoweCom.” Plaintiff Affidavit ¶38. SCB contends that it “has no records indicating that a company known as RoweCom was ever a client or ever made any payment to SCB.” Stockard Affidavit ¶10.
F. MCAD Filings
On or about December 23, 1997, plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination (“MCAD”). On August 6, 1998, plaintiff filed this action. On July 7, 1999, plaintiff requested that MCAD dismiss his complaint so he could pursue the discrimination claim in this Court. On September 20, 1999, the MCAD dismissed plaintiffs complaint.
On or about August 1, 1997, Balamotis filed a charge of discrimination with the MCAD. On July 31, 2000, MCAD dismissed Balamotis’s complaint for lack of probable cause.
DISCUSSION
The court allows summary judgment where there are no disputed issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The'moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). On matters for which the moving party does not bear the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the moving party has no reasonable expectation *166 of proving an essential element of its case. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on his pleadings and mere assertions of disputed facts. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
I. Breach of Good Faith and Fair Dealing/Constructive Termination
In Count IV, plaintiff asserts that SCB breached the implied covenant of good faith and fair dealing in terminating him. This claim cannot be resolved on summary judgment. Whether SCB constructively discharged plaintiff, whether SCB terminated plaintiff in bad faith, and whether SCB took any action regarding plaintiffs employment to deprive him properly owed commissions are disputed factual issues.
II. The Wage Act Claim
In Count V, plaintiff contends that defendants violated the Wage Act because SCB did not pay him commissions for placements made before his resignation. The Wage Act provides in relevant part: "(I]n no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.” G.L.c. 149, §148. The Act “shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee.” Id. Defendants contend that the commissions in question fall outside the Wage Act because the commissions were payable on a quarterly basis.
The local Federal Court addressed this issue in Cumpata v. Blue Cross Blue Shield of Massachusetts, 113 F.Sup.2d 164 (D.Mass. 2000). Judge Young, after noting the historical restriction of the Wage Act’s, application to monies that were part of “weekly income,” held that quarterly commissions fell “outside the protection of the Wage Act” and granted summary judgment to the defendant employer on that claim. Id. at 168-69. In reaching his conclusion, Judge Young also relied on the “triggered by contingencies” line of cases since the commissions were earned only when certain sales targets were reached. Id.
The same reasoning applies here. Locke’s commissions were calculated and paid quarterly, while his regular paycheck was paid according to the schedule mandated by §148. See Defendants’ Statements in Support of Undisputed Facts and Legal Elements at ¶ 13. The percentage of fees Locke earned as commissions was contingent on his production that quarter. According to the Agreement, commissions could be eliminated before, or even after, they were paid to Locke depending on the success of the candidates he placed with clients.
Therefore, Locke’s claim fails because it is outside the intended scope of the Wage Act as it is for compensation paid quarterly rather than weekly and triggered by numerous contingencies.
III. The Retaliation Claims
In Counts I, II and III, plaintiff contends that defendants are liable for retaliatory discharge under G.L.c. 15 IB, §§4(4), 4(4A), and 4(5). Plaintiffs theory is that he was terminated for “opposing” SCB’s sexual harassment and for “aiding” Balamotis.[5] Defendants argue that plaintiff cannot establish a prima facie case of retaliation because no evidence in the record shows an adverse employment action was taken against plaintiff due to his engagement in an activity protected by G.L.c. 15 IB.
To establish a primafacie case of retaliation under G.L.c. 151B, plaintiff must demonstrate that he reasonably and in good faith believed that defendants were engaged in wrongful discrimination, that he acted reasonably in response to his belief, and that defendants’ desire to retaliate against him was a determinative factor in the decision to terminate his employment. See Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).
Applying this standard, plaintiff fails to raise a triable issue as to whether his role in the Balamotis/Nardella incident played any part in SCB’s decision about his continued employment. First, there is no evidence that defendants knew about plaintiffs meeting with Balamotis’s attorney or that he had anything to do with that meeting. Second, plaintiff of his own initiative did nothing with regard to notifying SCB of the incident. Stockard learned about Nardella’s behavior from Balamotis. Plaintiff merely complied with Stockard’s request to describe, first orally and then in writing, what he had witnessed. Following instructions to cooperate with an internal investigation undertaken by am employer is not “opposition” to unlawful employer behavior within the meaning of G.L.c. 15 IB.
Thus, from the record before me, no evidence exists to infer that on July 15, 1997, when Stockard met with plaintiff about termination of his employment, Stockard or SCB was retaliating because of plaintiffs role in the Balamotis incident.
Similarly, plaintiff cannot show he had a good faith and objectively reasonable belief that SCB was engaging in discriminatory behavior. Plaintiff witnessed a single incident between two employees of SSII. Based *167 on that, no reasonable person would conclude that SCB or Stockard was engaging in unlawful discrimination.
Since plaintiffs claim that SCB breached G.L.c. 15 IB fails, his claim that Stockard aided and abetted the purported violation also fails.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED as to Counts I-III and Count V. Defendant’s motion is DENIED as to Count IV.

 These facts are undisputed unless noted or are stated in the light most favorable to plaintiff.

 “Net cash-in” is defined in the Agreement as the amount received and retained by SCB through an Account Executive’s “sole efforts” at placement minus certain expenses. ¶ 1(c).

 Plaintiff heard Nardella make inappropriate statements to Balamotis on two previous occasions. See Plaintiffs Answers to Interrogatories ¶11.

 General Laws c. 15IB, §§4(4) and 4(4A) provide in relevant part:
It shall be an unlawful practice:
4. For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.
4A. For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other personfor having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.
(Emphasis added.)
General Laws c. 151B, §4(5) provides in relevant part:
It shall be an unlawful practice:
5. For any person, whether an employer or an employee or not, to aid, incite, compel or coerce the doing of any acts-forbidden under this chapter or attempt to do so.
Plaintiff alleges that Stockard aided and abetted SCB’s retaliation by making the decision to discharge him.