Troy, J.
INTRODUCTION
The plaintiff, the Commonwealth of Massachusetts (“Commonwealth”), brought suit against the defendant, 128 Sales, Inc. (“128 Sales”) alleging that 128 Sales violated G.L.c. Ill, §142K, the Massachusetts Low Emission Vehicle Program (“LEV Program”). On October 19, 2001, the court denied the Commonwealth’s first motion for partial summary judgment as to liability without prejudice. The matter is now before the court on the Commonwealth’s second motion for partial summary judgment as to liability. For the reasons stated below, the plaintiffs motion for partial summary judgment is ALLOWED.
BACKGROUND
The Commonwealth alleges that 128 Sales, a car dealer located in Reading, Massachusetts, sold or leased 78 vehicles in violation of G.L.c. 111, §142K. G.L.c. 111, §142K(b) states in relevant part:
No corporation, person or other entity shall sell or offer for sale a motor vehicle or motor vehicle engine, manufactured during or after the first model year that the motor vehicle emissions standards specified in subsection (a) are in effect which is intended for use primarily in the commonwealth and which has not been certified according to regulations promulgated by the department.
Specifically, the Commonwealth alleges that the defendant violated 310 C.M.R. 7.40(2)(a), promulgated in accordance with the statute. This regulation provides in relevant part: “No corporation, person, or other entity shall sell, import, deliver, purchase, lease, rent, acquire, receive or register a new vehicle subject to 310 C.M.R. 7.40 in Massachusetts that has not received a California Air Resources Board (CARB) Executive Order.”
The Commonwealth alleges that the defendant violated the statute and regulations because 128 Sales sold or leased 78 non-CARB certified vehicles. The Commonwealth bases its argument on 128 Sales’ selling of vehicles, specifically Ford Windstars, with engine family codes that did not receive a CARB Executive Order, XFMXT03.82GF and YFMXT03.82FF.
The defendant contends that genuine issues of material fact exist as to whether the vehicles in question received CARB certification. The defendant bases its argument on the premise that the plaintiff did not conclusively show that the vehicles in question did not receive CARB certification. In making this argument, the defendant maintains that the plaintiffs affidavits are insufficient to eliminate any genuine issue of material fact. Furthermore, the defendant relies on the CARB certification of engine family codes similar to that of the family codes of the vehicles at issue. Finally, the defendant contends that the plaintiffs motion should be denied because the vehicles at issue passed tests in Massachusetts which were comparable to those offered by the CARB.
STANDARD OF REVIEW
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassero v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); MassR.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715 (1991).An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must put forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Community Nat’l Bank, 369 Mass. at 553. The nonmoving parly cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts . . .” Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
DISCUSSION
I. Engine Family Code Format
The Environmental Protection Agency (“EPA”) Standardized Engine/Test Group and Evaporative/Refueling Family Names established guidelines for naming engine families. Under these guidelines, an engine family consists of a series of characters. The first column indicates the model year. The second through fourth columns indicate the manufacturer. The fifth column indicates family name. Columns six through nine indicate displacement in liters. Finally, columns ten through twelve indicate sequence characters. Se *698 quence characters Eire chosen by the manufacturer to provide a unique identification for the family name.
In the instant case, 128 Sales sold vehicles equipped with non-CARB certified engine family groups: XFMXT03.82GF and YFMXT03.82FF. However, the CARB did certify similar family groups such as XFMXT03.82JC, YFXMT03.82J5, and YFXMT03.82JC. The defendant maintains that given the similarities between the CARB certified engine family groups and those at issue in this dispute, a genuine issue of material fact exists as to whether the vehicles at issue are also CARB certified. The court is not persuaded by this argument. Per the EPA guidelines, characters 10-12 of an engine family create unique and distinct family groups. Furthermore, in his affidavit, William A. Kostin, Section Supervisor of the Ford Motor Company’s Certification Engineering Department, Environmental and Safety Engineering Staff, recognizes the distinction between engine families differentiated only by characters 10-12. Kostin makes this distinction by referring to engine family groups which differ only in characters 10-12, but are not CARB certified. (Kostin’s Aff. at 7-9.) Accordingly, the CARB’s certification of engine family groups XFMXT03.82JC and YFXMT03.82J5, and YFXMT03.82JC applies to only these engine families and not to the similar engine family groups at issue in this dispute.
II.Executive Order
C.M.R. 7.40(2)(a) provides that: “No corporation, person, or other entity shall sell, import, deliver, purchase, lease, rent, acquire, receive or register a new vehicle subject to 310 C.M.R. 7.40 in Massachusetts that has not received a CARB Executive Order.” An Executive Order is defined as “a document issued by the CARB certifying that a specified engine family, test group, or model year vehicle has met all applicable [requirements] for sale in California.”
The defendant contends that a genuine issue of material fact exists as to whether the CARB issued an Executive Order for the vehicles in question. The defendant makes this argument because the regulations fail to define “engine family.” Given the absence of a definition of engine family, the defendant relies on the “model year" provision of the executive order definition. The defendant then concludes that because similar model year vehicles containing engine families such as XFMXT03.82JC, YFMXT03.82JC and YFMXT03.82J5 were CARB certified, the vehicles in question also are, or may be, CARB certified.
The defendant’s argument glosses over that characters 10-12 of a family group establish unique test groups. Even without a specific definition of engine family, it is clear that family groups XFMXT03.82GF and XFMXT03.82JC and family groups YFMXT03.82FF, YFMXT03.82JC, and YFMXT03.82J5 are distinct. This is evident from William Kostin’s statement in his affidavit that Windstars with engine family codes XFMXT03.82GF and YFMXT03.82FF did not receive a CARB executive order while engine families XFMXT03.82JC, YFMXT03.82JC and YFMXT03.82J5 received CARB certification. (Kostin’s Aff. at 7-9.) Accordingly, the CARB did not issue an executive order for either of the engine families in question, XFMXT03.82GF and YFMXT03.82FF.
III.Sufficiency of Plaintiffs Affidavits
The plaintiff submitted two affidavits relating to whether the CARB issued an executive order for the vehicles at issue. First, the plaintiff submitted the affidavit of Rhonda Runyon, an employee of the CARB. Ms. Runyon states in her affidavit that she conducted a search of the executive orders issued by the CARB and found that none were issued for family groups XFMXT03.82GF and YMFXT03.82FF. (Runyon's Aff. at 4.) Second, the plaintiff submitted the affidavit of William A. Kostin of the Ford Motor Company. Kostin indicated that the CARB did not issue executive orders for the vehicles in question. (Kostin’s Aff. at 7-9.)
Defendant maintains that plaintiffs affidavits fail to conclusively establish that the family groups at issue did not receive CARB executive orders. Specifically, defendant contends that Ms. Runyon does not unequivocally state in her affidavit that the engine families in question did not receive certification, that Ms. Runyon may not have had access to all CARB executive order records, and that plaintiff should have introduced evidence as to whether the vehicles in question contained an Emission Control Label under their hoods signifying CARB or other certification.
The court finds that the plaintiff sufficiently demonstrated that CARB executive orders did not issue for engine families XFMXT03.82GF and YMFXT03.82FF. Given the absence of any evidence to the contrary, the affidavits submitted by the plaintiff conclusively establish the absence of any such CARB executive orders.
IV.Compliance with CARB Requirements
The defendant maintains that even if the vehicles in question did not receive CARB certification, the plaintiffs motion should be denied because the vehicles meet the CARB requirements. In support of this argument, the defendant relies on Commonwealth v. Baystate Motorsports, Inc., Civil No. 00-5578-A (Suffolk Super. Ct. Jan. 23, 2002), which held that the failure to obtain CARB certification does not result in a per se denial of Massachusetts certification. The defendant also references the deposition testimony of Steven M. Sebestyen of the Massachusetts Registry of Motor Vehicles. Mr. Sebestyen testified that of the 24 vehicles subject to a dynamometer[1] test, 20 would qualify for CARB certification.
The plaintiff, on the other hand, relies on C.M.R. 7.40(2)(a), promulgated in accordance with G.L.c. 111, §142K. This regulation provides in relevant part: “No corporation, person, or other entity shall sell, import, *699 deliver, purchase, lease, rent, acquire, receive or register a new vehicle subject to 310 C.M.R. 7.40(2)(a) in Massachusetts that has not received a CARB Executive Order.” Given that the CARB did not issue executive orders for the vehicles in question, the plaintiff contends that there is no material issue of fact as to whether the vehicles were certified for sale in Massachusetts.
According to the affidavit of Christine Kirby of the DEP, passing the emissions testing portion of the Massachusetts’ inspection and maintenance (“I&M”) testing program does not indicate that a vehicle complies with California emissions standards. But even without her affidavit, successful emissions testing subsequently done on the vehicles in Massachusetts does not abrogate the defendant’s failure to comply with the explicit provisions of 310 C.M.R. 7.40(2)(a) requiring that a vehicle sold in Massachusetts must receive CARB certification before it can be sold in Massachusetts. To interpret the regulation in this manner would have the effect of rendering it unenforceable. It is unclear what affidavits were before the court in Baystate Motorsports but, in any event, that case is distinguishable because other facts were in play in that action such as whether the dealer-to-dealer exemption of the LEV Program applied, whether the vehicles were intended for use primarily in the Commonwealth, and whether the vehicles at issue were exempt from G.L.c. 111, §142K because they were specialty and collectable cars not driven regularly. Civil No. 00-5578-A at 7. In the instant case, the vehicles is question are Ford Windstars, not specialty cars, the dealer-to dealer exemption is not at issue, and the vehicles were intended for use primarily in the Commonwealth.[2]
ORDER
For the foregoing reasons, it is ORDERED that the plaintiffs motion for partial summary judgment be and hereby is ALLOWED.

 dynamometer is defined by 310 C.M.R. 60.02 as a device which applies a load to vehicle’s drive wheels during an emission inspection while the vehicle is being operated in a stationary, secure condition to simulate actual driving conditions.

 With regard to whether the vehicles were intended for use primarily in the Commonwealth, the court relies on the plaintiffs undisputed statements, citing to admissions, that the defendant sold or leased the 78 vehicles at issue for registration in Massachusetts and presented the purchasers’ applications for title/registration to the Massachusetts RMV. (Pl.’s Statement Undisputed Material Facts at 1,2; Def.’s Responses Pl.’s Statement of Undisputed Material Facts at 1, 2.)