Tucker, Richard T., J.
This is a tort suit arising out of statements that Assumption College’s (“Assumption’s”) athletic director Theodore Paulauskas (“Paulauskas”) made regarding the resignation of Assumption men’s basketball coach, Thomas Ackerman (“Ackerman”). Ackerman filed a complaint against Paulauskas and Assumption (“the defendants”), alleging defamation, breach of contract, and interference with a contractual relationship. The defendants move here for summary judgment on Counts I and II (defamation).
For the following reasons, the defendants’ renewed motion for summary judgment is DENIED.
BACKGROUND
Assumption hired Ackerman to coach its Division II men’s basketball team in June of 1999. Every year from the date of his hire to 2004, Ackerman signed contracts for terms running from September 1 to August 31. Even before Ackerman assumed his position, the Worcester Telegram & Gazette (“Telegram”) began interviewing him for articles about the team. The summary judgment record includes hundreds of pages of these articles in the years that followed. The position description for Ackerman’s position specifies that he was responsible for “(ajctively participat[ing] in department fund raising and public relations events, including media interviews, speaking engagements, and community service projects.” Further, the athletic department specified that it preferred candidates with “(djemonstrated public relations or administrative experience in athletic programming” and “(djemonstrated fund raising experience.”
On December 30, 2004, Paulauskas informed Ackerman that he would not renew Ackerman’s coaching contract for the period beginning September 1, 2005. Paulauskas ultimately requested that Acker-man resign, effective February 2005, so that Paulauskas could advertise and interview candidates for the position. Ackerman submitted his letter of resignation on February 4, 2005.
The Telegram interviewed Ackerman and Paulauskas on February 9, 2005. An article bearing the headline in capital lettering “Ackerman out at Assumption” appeared in the Telegram on February 10, 2005. In this article, the reporter quoted Paulauskas as saying “I am looking for someone who is going to get to the office before me and leave after me.” The reporter further quoted Paulauskas as saying “I am looking for someone with passion, someone that projects well in the Community and someone who will aide in our fundraising efforts.”
On August 17, 2005, Ackerman filed a six-count complaint against Paulauskas and Assumption alleging defamation (Counts I and II), breach of contract (Counts Ill and IV), and interference with contractual relations (Counts V and VI). On October 24, 2005, the parties stipulated to the dismissal of Counts V and VI with prejudice. The defendants requested summary judgment on the remaining counts. Regarding the defamation claims, the defendants argued that the quotations at issue were statements of opinion rather than fact, and that they were not of and concerning Ackerman. Further, they argued that this court should dismiss the claims relating to breach of contract claims because Ackerman had failed to show any breach. On March 10, 2008, this court allowed the defendants’ motion in full as to Counts III and IV, but denied it as to Counts I and II to the extent that they relate to the above-quoted statements [23 Mass. L. Rptr. 666J.[2] The defendants have now renewed their motion for summary judgment on Counts I and II of the complaint, and Ackerman opposes their motion.
DISCUSSION
The defendants request summary judgment here because Ackerman cannot show that Paulauskas made the quoted statements with actual malice. This court allows summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively that there is no triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmov-ing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); *528 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass, at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The defendants argue that this court should allow summary judgment because Ackerman cannot demonstrate that Paulauskas spoke with “actual malice that is, with knowledge that it was false or with reckless disregard of whether it was false or not.” New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). However, because Ackerman was not a public official, the actual malice standard is applicable only if Ackerman was a limited purpose public figure. See Curtis Publ’g Co. v. Butts, 388 U.S. 130, 154-55 (1967) (applying the New York Times rule to public figures); Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974) (applying the New York Times rule to limited purpose public figures); accord Murphy v. Boston Herald, Inc., 449 Mass. 42, 48 (2007). Since there are no material questions of fact here, whether Ackerman was a limited purpose public figure is a question of law and inappropriate for consideration by a juiy. Bowman v. Heller, 420 Mass. 517, 522 (1995).
A plaintiffs status as a limited purpose public figure generally depends on the existence of a controversy of interest to the public. Massachusetts courts consider a plaintiff to be a public figure for a limited purpose when he either (1) “voluntarily injects himself or is drawn into a particular public controversy,” or (2) engages the public’s attention in an attempt to influence the outcome of a public controversy. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 866-67 (1975), quoting Gertz, 418 U.S. at 352. What Massachusetts courts look for, therefore,, is “the plaintiffs participation in the particular controversy giving rise to the defamation.” Shaari v. Harvard Student Agencies, 427 Mass. 129, 134 (1998). See also, e.g., Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 384 (2005) (finding that “plaintiff (unwillingly) achieved public figure status by reason of her status as chair and principal investigator of an experimental research protocol under which two patients at a prominent research institution received chemotherapy overdoses”); Shephard v. Bay Windows, Inc., 16 Mass. L. Rptr. 726 (2003) (ruling that plaintiffs were public figures for the purposes of the case because they were involved in a controversy regarding “the governance of a non-profit organization with a substantial membership, and a significant impact on the Boston area gay community”).
In contrast, no controversy exists in this case beyond the comments that are themselves at issue. Therefore, the alleged defamatory statements did not arise out of Ackerman’s injecting himself in a controversy or engaging the public in an attempt to influence the outcome of a controversy. No matter how many articles the Telegram published quoting Ackerman between 1999 and 2005, he was not a public figure. As a private person, Ackerman need not demonstrate actual malice to survive summary judgment. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003) (distinguishing between the levels of fault required for private persons and for public officials and figures).
ORDER
It is hereby ORDERED that the defendants’ motion for summary judgment be DENIED.

The March 10, 2008, decision allowed summary judgment as to Counts I and II for the following statements also contained within the article at issue: (1) “the program wasn’t on the right path and the prospects didn’t look good,” and (2) “[w]e’re not looking for a quick fix. We’re looking to build a basketball program, one that will contend every year for a conference title.”